**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Virginia A. Sanderson (Bar No. 240241)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ginny@KRInternetLaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHARON GENTGES,** an individual, **MARION KERSTING,** an individual, **JOHN NEKORANEC,** an individual, and **LEANNA NEKORANEC,** an individual, and **LYLE J. HALS,** an individual, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>**TREND MICRO, INC.,** a California corporation, and **DOES 1-10,** inclusive,<br><br>Defendants. | Case No. 4:11-cv-05574-SBA<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF: 1) BUS. & PROF. C. §17200 AND 2) CIVIL CODE §1750 ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |



1    Plaintiffs Sharon Gentges, Marion Kersting, John Nekoranec, Leanna Nekoranec,

2  and Lyle J. Hals, individually and on behalf of a class of similarly situated persons, bring

3  this action, by and through their undersigned counsel, and allege as follows:

4                                    **INTRODUCTION**

5    1.    Defendant Trend Micro, Inc. ("Trend Micro") has stolen money from its own

6  customers by renewing the customers' software membership without the customers'

7  knowledge or consent.

8    2.    Trend Micro advertises and sells computer security and anti-virus software

9  to businesses and individuals on its Internet website, located at <www.trendmicro.com>.

10   3.    On the Trend Micro website, a consumer can purchase a Trend Micro

11  computer security product in the form of a software subscription, for terms of one year,

12  two years, or more years.  After the expiration of the subscription term, the Trend Micro

13  software will cease to function unless the consumer renews the subscription.

14   4.    When purchasing a Trend Micro product through Trend Micro's website, a

15  consumer selects the product, and then proceeds through several checkout screens,

16  where the consumer is offered additional products and is asked to enter his or her billing

17  information.

18   5.    At no point during the checkout process does Trend Micro notify consumers

19  that it will automatically renew the consumers' software subscriptions upon the expiration

20  of the term, or that Trend Micro will automatically charge consumers for the renewals

21  without seeking the consumers' consent.  In fact, Trend Micro's disclosures contain at

22  most obscure and oblique references, in miniscule type, to the phrase "auto-renew."

23  Trend Micro certainly never discloses to consumers that it will automatically charge

24  consumers to renew the Trend Micro subscription.  As a result of Trend Micro's fraudulent

25  disclosures, people either purchase Trend Micro products believing that the purchase is a

26  one-time purchase with no need to ever renew, or that any renewal will have to be

27  initiated by the consumer.

28  //

6. Trend Micro's failure to clearly and conspicuously disclose the material terms of its automatic renewal program before it obtained consumers' billing information and before it charged consumers violates 15 U.S.C. §8402, California Business and Professions Code sections 17602 and 17200, and California Civil Code section 1750 *et seq.*

7. Plaintiffs purchased a one-year subscription to a Trend Micro antivirus software package through Trend Micro's website. While each Plaintiff spent a reasonable time reviewing Trend Micro's website prior to making their purchases, due to Trend Micro's failure to disclose material terms of the transaction Plaintiffs did not receive any notice that Trend Micro would automatically renew their software subscriptions.

8. In or around October 2011, Trend Micro charged Plaintiff Gentges $62.95 when Trend Micro automatically renewed her software subscription.

9. In October 2010, and again in October 2011, Trend Micro charged Plaintiff Kersting $50.35 and $71.95 respectively, when Trend Micro automatically renewed her software subscription.

10. In 2010 and again in 2011, Trend Micro charged Plaintiffs John Nekoranec and Leanna Nekoranec—who maintain a joint credit card account—$79.95 for each of their two computers.

11. In or around November 2011, Trend Micro charged Plaintiff Lyle J. Hals $39.95 when Trend Micro automatically renewed his software subscription.

12. As a result of Trend Micro's misconduct, Plaintiffs and similarly situated persons have been harmed.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332(d)(2) because this is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which a member of the class of plaintiffs is a citizen of a State different from the Defendant.

//

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

14.     This Court has personal jurisdiction over Defendant because a substantial part of Defendant's misconduct that gave rise to this action occurred in California. Moreover, Defendant Trend Micro is a California corporation based in California.

15.     Venue is proper under 28 U.S.C. §1391(a)(1)-(3) because Defendant resides in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendant is subject to personal jurisdiction in this district.

**INTRADISTRICT ASSIGNMENT**

16.     Pursuant to Local Civil Rule 3-2(c), this action has been assigned to the San Francisco Courthouse because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco, California.

**PARTIES**

17.     Plaintiff Sharon Gentges is an individual residing in Jefferson City, Missouri.

18.     Plaintiff Marion Kersting is an individual residing in Melrose, Wisconsin.

19.     Plaintiff John Nekoranec is an individual over the age of 65 residing in Chandler, Arizona.

20.     Plaintiff Leanna Nekoranec is an individual over the age of 65 residing in Chandler, Arizona.

21.     Plaintiff Lyle J. Hals is an individual over the age of 65 residing in Morris Plains, New Jersey.

22.     John Nekoranec and Leanna Nekoranec are married and have a joint credit card account.

23.     On information and belief, Defendant Trend Micro, Inc. is a California corporation with its principal office in Cupertino, California.

24.     Plaintiffs are uncertain of the true names and capacities of those Defendants sued by the fictitious names Does 1 through 10, who also are responsible and liable for the injuries alleged in this complaint and who proximately caused damages

to Plaintiffs and the members of the Class.  Plaintiffs will amend this complaint to add the true names and capacities of the Does when they become known.

25.     Upon information and belief, at all times Defendants were the partners and/or co-conspirators of each other, and each acted within the course and scope of such relationship so that, as a result, all Defendants are jointly and severally liable for the acts alleged herein.

<p style="text-align:center"><strong>FACTUAL ALLEGATIONS</strong></p>

26.     Trend Micro advertises and offers for sale various computer security products.

27.     Trend Micro advertises and sells its computer security products on its website, located at <www.trendmicro.com>.

28.     On information and belief, Trend Micro also contracts with computer manufacturers and retailers to preinstall trial subscriptions of Trend Micro's products on new computers.  When that trial subscription expires, the consumer is prompted to purchase a subscription from Trend Micro.  If the consumer decides to purchase a subscription, the consumer follows the same steps on the Trend Micro website as if he or she were purchasing the Trend Micro subscription for the first time

29.     Among the several computer security products that a consumer can purchase on the Trend Micro website are Titanium, Online Guardian, Smart Surfing, and SafeSync.  Trend Micro displays these products on its website under the Home and Home Office Tab.

30.     If a consumer wishes to purchase one of Trend Micro's products, Trend Micro invites the consumer to click on the "Buy now" button.  Nothing on the Trend Micro website at this stage of the purchase process discloses that the subscription will automatically renew.

31.     If the consumer clicks on the "Buy now" button, he or she may be taken to other web pages, which offer additional Trend Micro products for sale.

//

32. Ultimately, the Trend Micro website takes the consumer to "Step 1" of the purchase process, where the website summarizes the products that the consumer has selected to purchase.

33. Step 1 displays an image of the product selected, the name of the product, and the price of the product.

34. In smaller print, under the bold title of the product, Step 1 displays the text: "(update Auto-Renew status) Auto-Renew."  If the consumer clicks on this text, a pop-up window appears that allows the consumer to turn off the auto-renew feature.  However, a reasonable consumer would not notice the auto-renew text or click on it, as it is not clearly and conspicuously disclosed as a material term of the transaction.  A screenshot of Trend Micro's Step 1 is pasted below:[1]

//
//
//
//
//
//
//
//
//
//
//
//
//

---

[1] As yet another problem with Trend Micro—the Trend Micro website attempts to compel the consumer to purchase products that the consumer did not select.  For example, in the screenshot above, the consumer did not select either the "Smart Surfing for Mac" or the "Download Protection Service," yet these products show up in the consumer's shopping cart.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    35.    The Step 1 webpage does not display any additional information about an

19 automatic renewal of the software subscription or the costs to the consumer for the

20 automatic renewal.

21    36.    The Step 1 webpage invites consumers to click on the "Continue Checkout"

22 button.

23    37.    After a consumer clicks on the "Continue Checkout" button, he or she is

24 taken to "Step 2" of the purchase process on the Trend Micro website.

25    38.    Step 2 asks the consumer to enter his or her billing and payment

26 information in a typical website entry form.

27 //

28 //

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

39.     Below the billing and payment entry forms on Step 2, in smaller print, the Trend Micro website displays the following text and link:   "What is the Auto-Renew Service?"  A screenshot of Trend Micro's Step 2 is pasted below:



40.     The Step 2 webpage does not display any information that the consumer will be charged for the automatic renewal of the software subscription.

41.     The Step 2 webpage invites the consumer to click on the "Place Secure Order" button after the consumer has entered his or her billing and payment information.

42.     Once a consumer clicks on the "Place Secure Order" button, Trend Micro completes the purchase and enrolls the consumer in the automatic renewal program.

43.     A reasonable consumer would not review Trend Micro's disclosures of the automatic renewal process because such disclosures are not clearly or conspicuously disclosed to consumers.  In fact, the disclosures are purposely hidden from consumers,

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1   with only the most oblique and obscure references displayed on the website's ordering

2   process.

3       44.   Because a reasonable consumer would not review Trend Micro's

4   disclosures on the automatic renewal process, a reasonable consumer would not know

5   that he or she has to affirmatively opt out of the automatic renewal process on the pop-up

6   window reached through the Step 1 webpage.

7       45.   If a consumer does not opt out of the automatic renewal program, after the

8   term of the software subscription expires, Trend Micro automatically renews the software

9   subscription and charges the consumer's credit card, debit card, or other payment

10  source.

11      46.   Trend Micro charges consumers for the automatic renewal even though

12  Trend Micro fails to provide consumers with text that clearly and conspicuously discloses

13  the material terms of the transaction before obtaining the consumers' billing information.

14  In fact, Trend Micro fails to make any disclosures of the automatic renewal charges, let

15  alone clear and conspicuous disclosures.

16      47.   Moreover, Trend Micro charges consumers for the automatic renewal even

17  though it fails to obtain the consumers' express informed consent before charging the

18  consumers for the automatic renewal.

19      48.   As a result of Trend Micro's failure to make adequate disclosures, a

20  reasonable consumer who purchases a software subscription from the Trend Micro

21  website would not realize that he or she will be charged for the automatic renewal when

22  the software membership expires.

23      49.   Moreover, Trend Micro has failed to conspicuously disclose a toll-free

24  telephone number, email address, or other easy-to-use mechanism for cancelling the

25  Trend Micro subscription.  Thus, once consumers realize that they have been improperly

26  charged for Trend Micro's automatic renewal, consumers have great difficulty finding

27  contact information for Trend Micro in order to contest the charge and cancel the

28  subscription.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

50.     Trend Micro's misconduct has damaged numerous consumers in the form of automatic renewal fees that were not adequately disclosed to the consumers.

**ALTERNATIVE FACTUAL ALLEGATIONS**

51.     In the alternative to facts described above, and on information and belief, Trend Micro has contracted with third party Digital River Inc. ("Digital River") to assist with the sale of Trend Micro's computer security products through Trend Micro's website.

52.     On information and belief, Digital River, with Trend Micro, co-operates the portions of Trend Micro's website under the domain <store.trendmicro.com>.

53.     On information and belief, and despite Digital River's co-operation of portions of the Trend Micro website, Trend Micro owns the website.

54.     On information and belief, and despite Digital River's co-operation of portions of the Trend Micro website, Trend Micro retains control over the Trend Micro website.

55.     Trend Micro's products and trademarks are prominently displayed on the portions of the Trend Micro website co-operated by Digital River, Trend Micro's copyright notice appears on the website, and the website provides links to Trend Micro's privacy policy, code of conduct, legal notice, and end user license agreement.

56.     On information and belief, Trend Micro has entered a contract with Digital River, which preserves Trend Micro's right to control the content and functionality of the Trend Micro website.  Moreover, on information and belief, this contract details how Digital River, as a vendor for Trend Micro, will assist Trend Micro in servicing Trend Micro's customers by co-operating Trend Micro's online ecommerce store.

57.     A reasonable consumer would understand that the entirety of the Trend Micro website is owned, controlled, and operated by Trend Micro.

58.     If a consumer wishes to purchase one of Trend Micro's products from the Trend Micro website, Trend Micro invites the consumer to follow the typical checkout procedure described above.

//

59.    As the consumer completes the checkout, he or she is taken from the portion of the Trend Micro website operated exclusively by Trend Micro to the portion of the Trend Micro website co-operated by Digital River and Trend Micro.

60.    The webpage on which the consumer completes the Trend Micro transaction is co-operated by Digital River and Trend Micro.  However, reasonable consumers purchasing products on the Trend Micro website believe they are purchasing products from Trend Micro.

61.    A reasonable consumer would not review the disclosures of the automatic renewal process on the Trend Micro website because such disclosures are not clearly or conspicuously disclosed to consumers.  In fact, the disclosures are hidden from consumers, with only the most oblique and obscure references displayed on the website's ordering process.

62.    Because a reasonable consumer would not review the disclosures of the automatic renewal process, a reasonable consumer would not know that he or she has to affirmatively opt out of the automatic renewal process on the pop-up window reached through the Step 1 webpage.

63.    If a consumer does not opt out of the automatic renewal program, after the term of the software subscription expires, Digital River automatically renews the software subscription and charges the consumer's credit card, debit card, or other payment source.

64.    On information and belief, Trend Micro receives a large portion—if not the majority—of each sale and automatic renewal completed through the Trend Micro Website.

65.    On information and belief, Trend Micro had specific knowledge of Digital River's misconduct in its operation of portions of the Trend Micro website.

66.    On information and belief, Trend Micro provided substantial assistance to Digital River in the creation, operation, and maintenance of the portions of the Trend Micro website that failed to adequately disclose the automatic renewal program.

67.     On information and belief, Trend Micro reviewed the portions of the Trend Micro website that failed to adequately disclose the automatic renewal program.

68.     On information and belief, Trend Micro received numerous complaints from consumers about the portions of the Trend Micro website that failed to adequately disclose the automatic renewal program.

69.     As one limited example, Trend Micro has an "F" rating with the Better Business Bureau based on its failure to respond to numerous consumer complaints.

70.     On information and belief, until this action was filed, Trend Micro took no action to address Digital River's unfair, fraudulent, and unlawful use of the Trend Micro website, which had resulted in numerous consumer complaints.  To the contrary, Trend Micro assisted Digital River in maintaining the Trend Micro website.

71.     On information and belief, Trend Micro received significant compensation from Digital River's co-operation of portions of the Trend Micro website.

### Plaintiff Gentges

72.     In or around October 2009, Plaintiff Gentges purchased a new personal computer from Best Buy.  The computer included a 1-year Trend Micro subscription already installed on it.

73.     After the expiration of the 1-year term, Gentges received a notification that her Trend Micro subscription was about to expire and that Gentges could renew the subscription on the Trend Micro website.

74.     In or around October 2010, Gentges visited the Trend Micro website, where she was prompted to enter her contact and billing information to renew the Trend Micro subscription.

75.     Gentges chose to renew the Trend Micro subscription for one year.

76.     While Gentges went through the process of renewing her subscription on the Trend Micro website, she did not see any notification that she would be charged for an automatic renewal when the subscription term ended in October 2011.

77.     In October 2011, Trend Micro, without Gentges's knowledge or consent,



KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    automatically renewed Gentges's Trend Micro subscription and charged Gentges $62.95

2    for this renewal.

3        78.    Despite Gentges's efforts, she could not find a way to contact Trend Micro

4    to stop the automatic renewal charges.

5        79.    As a result of Trend Micro's misconduct, Gentges has been harmed and

6    has suffered a loss of money.

7                                **Plaintiff Kersting**

8        80.    In or around October 2009, Plaintiff Kersting purchased a new personal

9    computer from Best Buy.  The computer included a Trend Micro trial subscription already

10   installed on it for approximately 30 days.

11       81.    After the expiration of the trial subscription, Kersting received a notification

12   that her Trend Micro subscription was about to expire and that Kersting could renew the

13   subscription on the Trend Micro website.

14       82.    In or around October 2009, Kersting visited the Trend Micro website, where

15   she was prompted to enter her contact and billing information to renew the Trend Micro

16   subscription.

17       83.    Kersting chose to renew her Trend Micro subscription for one year.

18       84.    While Kersting went through the process of renewing her subscription on

19   the Trend Micro website, she did not see any notification that she would be charged for

20   an automatic renewal when the subscription term ended.

21       85.    On October 5, 2010, Trend Micro, without Kersting's knowledge or consent,

22   automatically renewed Kersting's Trend Micro subscription and charged Kersting $50.35.

23       86.    On October 6, 2011, Trend Micro, without Kersting's knowledge or consent,

24   automatically renewed Kersting's Trend Micro subscription and charged Kersting $71.95

25   for this renewal.

26       87.    Kersting first noticed both of these unauthorized charges in October 2011.

27       88.    Despite Kersting's efforts, she could not find a way to contact Trend Micro

28   to stop the automatic renewal charges.

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

89.   As a result of Trend Micro's misconduct, Kersting has been harmed and has suffered a loss of money.

**Plaintiffs John and Leanna Nekoranec**

90.   Plaintiffs John and Leanna Nekoranec are senior citizens as that term is defined in Civil Code section 1761(f).

91.   In mid-2009, Plaintiffs John and Leanna Nekoranec (collectively, the "Nekoranecs") purchased a new computer from Best Buy.   A few months later, the Nekoranecs purchased a second new computer from Best Buy.

92.   Both of these new computers included a Trend Micro trial subscription already installed on them, which on information and belief, were activated through the Trend Micro website.

93.   At no point did the Trend Micro website disclose that the Nekoranecs would be charged for an automatic renewal when their two subscription terms ended.

94.   In 2010, Trend Micro, without the Nekoranecs' knowledge or consent, automatically renewed the Nekoranecs' two Trend Micro subscriptions and charged the Nekoranecs $79.95 for each of the two subscriptions.

95.    In 2011, Trend Micro, without the Nekoranecs' knowledge or consent, again automatically renewed the Nekoranecs' two Trend Micro subscriptions and charged the Nekoranecs $79.95 for each of the two subscriptions.

96.   The Nekoranecs first noticed all four of these unauthorized charges in October 2011.

97.   Despite the Nekoranecs' efforts, they could not find a way to contact Trend Micro to stop the automatic renewal charges.

98.   As a result of Trend Micro's misconduct, the Nekoranecs have been harmed and have suffered a loss of money.

**Plaintiff Lyle J. Hals**

99.   Plaintiff Hals is a senior citizen as that term is defined in Civil Code section 1761(f).

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

100.   On November 24, 2010, Plaintiff Hals purchased a new personal computer from Best Buy.   The computer included a 1-year Trend Micro subscription already installed on it.

101.   At no point did Trend Micro disclose that the Hals would be charged for an automatic renewal when his subscription ended.

102.   In November 2011, Trend Micro, without Hals's knowledge or consent, automatically renewed Hals's Trend Micro subscription and charged Hals $39.95 for this renewal.

103.   Hals obtained a phone number for Trend Micro through his credit card company and called Trend Micro in an attempt to obtain a refund of the automatic renewal charge.   Despite Hals's efforts, he reached an overseas support center that advised him that they provided only technical support and could not help with a refund.

104.   Hals obtained another phone number for Trend Micro and again called Trend Micro in an attempt to obtain a refund of the automatic renewal charge.   Despite Hals's efforts, Trend Micro refused to refund the charge.

105.   Thereafter, Hals sent a letter to Trend Micro at its principal office in Cupertino, California via registered mail in an attempt to obtain a refund of the automatic renewal charge.   Trend Micro never responded and did not refund the charge.

106.   As a result of Trend Micro's misconduct, Hals has been harmed and has suffered a loss of money.

## CLASS ACTION ALLEGATIONS

107.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on their own behalf and as representatives of all persons: a) who purchased a software membership product on the Trend Micro website, and b) who were charged for the automatic renewal of that software product by Trend Micro on or after November 15, 2007 (the "Class").

108.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs John and Leanna Nekoranec and Lyle J. Hals bring this action on their own behalf and as representatives

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

1    of all persons: a) who purchased a software membership product on the Trend Micro

2    website, b) who were charged for the automatic renewal of that software product by

3    Trend Micro on or after November 15, 2007, <u>and</u> c) who are senior citizens as defined in

4    California Civil Code section 1761(f) (the "Senior Subclass").

5        109.   A class action is appropriate here because there exists an ascertainable

6    class and a well-defined community of interest in the questions of law and fact involved.

7        110.   The Class is readily ascertainable from Defendants' records.

8        111.   A class action is the superior method for adjudicating this controversy

9    because: a) the Class is so numerous that the joinder of all members is impracticable, b)

10   questions of law and fact common to the Class predominate over any question affecting

11   only individual Class members, and c) the claims of the representative Plaintiffs are

12   typical of the claims of the Class, and the representative Plaintiffs will fairly and

13   adequately protect the interests of the Class.

14       112.   The common questions of law and fact include:

15       •    Whether Trend Micro charged or attempted to charge consumers for

16            goods or services sold in a transaction effected on the Internet

17            through a negative option feature without providing text that clearly

18            and conspicuously disclosed all material terms of the transaction

19            before obtaining the consumers' billing information in violation of 15

20            U.S.C. §8403;

21       •    Whether Trend Micro charged or attempted to charge consumers for

22            goods or services sold in a transaction effected on the Internet

23            through a negative option feature without obtaining the consumers'

24            express informed consent before charging the consumers for

25            products or services through such transaction in violation of 15

26            U.S.C. §8403;

27       •    Whether Trend Micro failed to provide a simple mechanism for

28            consumers to stop recurring charges in violation of 15 U.S.C. §8403;

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

- Whether Trend Micro failed to present its automatic renewal offer terms in a clear and conspicuous manner before the subscription was fulfilled in visual proximity to the request for consent to the offer in violation of California Business and Professions Code section 17602(a)(1);

- Whether Trend Micro charged consumers for an automatic renewal without first obtaining consumers' affirmative consent to the agreement containing the automatic renewal offer terms in violation of California Business and Professions Code section 17602(a)(2);

- Whether Trend Micro failed to provide a toll-free telephone number, electronic mail address, or other cost-effective, timely, and easy-to-use mechanism for cancellation of Trend Micro's subscription and automatic renewal program in an acknowledgment provided to consumers in violation of California Business and Professions Code section 17602(a)(3) & (b);

- Whether Trend Micro's conduct constitutes a fraudulent, unfair, and/or unlawful practice in violation of California Business and Professions Code section 17200;

- Whether Trend Micro violated the California Consumer Legal Remedies Act, Civil Code section 1750 *et seq.* by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have; by representing that transactions confer or involve rights, remedies or obligations which they do not have or involve, or which are prohibited by law; and/or by inserting an unconscionable provision in contracts with consumers; and

- Whether Trend Micro aided and abetted Digital River in the above-described misconduct by knowing about and substantially assisting

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

Digital River in its misconduct.

113.   Plaintiffs can and will fairly and adequately represent and protect the interests of the Class because:

- All of the questions of law and fact regarding the liability of Defendants are common to the Class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of Defendants as to all Class members;

- Without the representation provided by Plaintiffs, it is unlikely that any Class members would receive legal representation and/or obtain recourse for the misconduct carried out by Defendants; and

- Plaintiffs have retained competent attorneys who are experienced both in the conduct of class actions and the law governing online advertising, negative options, e-commerce, and online payment systems.  Plaintiffs and their attorneys have the necessary resources to litigate this class action, and Plaintiffs and their attorneys are aware of their fiduciary responsibility to the Class members and are determined to discharge those duties to obtain the best possible recovery for the Class.

**FIRST CLAIM FOR RELIEF**
**(Violation of California Business and Professions Code section 17200)**

114.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 113.

115.   Plaintiffs and the other Class members purchased a Trend Micro software subscription through the Trend Micro website.

116.   During this purchase process on the Trend Micro website, Trend Micro enrolled Plaintiffs and the other Class members in a program to automatically renew their software subscriptions.

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    117.    Trend Micro subsequently charged Plaintiffs and the other Class members

2    for the automatic renewal of their software subscriptions.

3    118.    Trend Micro's above-described misconduct is a fraudulent business

4    practice, as that term is used in Business and Professions Code section 17200, because

5    a reasonable person would have been deceived and wrongfully charged as a result of

6    Trend Micro's failure to provide adequate disclosures of its automatic renewal program

7    on the Trend Micro website.

8    119.    Trend Micro's above-described misconduct is an unfair business practice,

9    as that term is used in Business and Professions Code section 17200 because a

10   reasonable person would have been deceived and wrongfully charged as a result of

11   Trend Micro's failure to provide adequate disclosures of its automatic renewal program

12   on the Trend Micro website.

13   120.    Trend Micro's above-described misconduct is an unlawful business

14   practice, as that term is used in Business and Professions Code section 17200 because

15   Trend Micro's misconduct violates 15 U.S.C. §8403 and Business and Professions Code

16   section 17602.

17   121.    In violation of 15 U.S.C. §8403, Trend Micro charged Plaintiffs and the

18   other Class members for the automatic renewal even though Trend Micro failed to

19   provide text that clearly and conspicuously disclosed all of the material terms of the

20   transaction before obtaining the Class members' billing information.

21   122.    In violation of 15 U.S.C. §8403, Trend Micro charged Plaintiffs and the

22   other Class members for the automatic renewal even though Trend Micro failed to obtain

23   the Class members' express informed consent before charging them for the automatic

24   renewal.

25   123.    In violation of 15 U.S.C. §8403, Trend Micro failed to provide Plaintiffs and

26   the other Class members with a simple mechanism to stop the recurring charges for the

27   automatic renewals.

28   //

124.   In violation of California Business and Professions Code section 17602(a)(1), Trend Micro failed to present its automatic renewal offer terms in a clear and conspicuous manner before the subscription was fulfilled in visual proximity to the request for consent to the offer

125.   In violation of California Business and Professions Code section 17602(a)(1), Trend Micro charged consumers for an automatic renewal without first obtaining consumers' affirmative consent to the agreement containing the automatic renewal offer terms.

126.   In violation of California Business and Professions Code section 17602(a)(1), Trend Micro failed to provide Plaintiffs and the other Class members with a toll-free telephone number, electronic mail address, or other cost-effective, timely, and easy-to-use mechanism to cancel Trend Micro's subscription and automatic renewal program in an acknowledgment provided to consumers.

127.   By engaging in the above-described misconduct, Trend Micro has engaged in unlawful, unfair, and fraudulent business acts in violation of California Business and Professions Code section 17200.

128.   In the alternative to the preceding paragraphs in this First Claim for Relief, Trend Micro aided and abetted Digital River in carrying out its unlawful, unfair, and fraudulent enrollment of Plaintiffs and the other Class members in Trend Micro's automatic renewal program, when Trend Micro knew about and substantially assisted Digital River in its misconduct.

129.   As a result of Trend Micro's misconduct, Plaintiff and the other Class members have suffered an injury in fact and have lost money.

**SECOND CLAIM FOR RELIEF**
**(Violation of the Consumer Legal Remedies Act, Civil Code section 1750 *et seq.*)**

130.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 129.

//

Case No. 4:11-cv-05574-SBA                    19                    FIRST AMENDED COMPLAINT

1    131.   Plaintiffs and the other Class members purchased a Trend Micro software

2    subscription through the Trend Micro website.

3    132.   During this purchase process on the Trend Micro website, Trend Micro

4    enrolled Plaintiffs and the other Class members in a program to automatically renew their

5    software subscriptions.

6    133.   Trend Micro subsequently charged Plaintiffs and the other Class members

7    for the automatic renewal of their software subscriptions.

8    134.   By engaging in the above-described misconduct Trend Micro represented

9    to Plaintiffs and the other Class members that its software subscription had

10   characteristics or qualities that it did not have.  To wit, Trend micro failed to disclose

11   material terms about the software subscription to the Class members, and thereby made

12   misleading representations about the characteristics and qualities of the subscription.

13   Trend Micro's omissions regarding the automatic renewal were omissions of fact that

14   Trend Micro was obliged to disclose.

15   135.   By engaging in the above-described misconduct, Trend Micro represented

16   that Plaintiffs' and the other Class members' purchase of Trend Micro's software

17   subscription involved rights or obligations that the transactions did not involve and which

18   were prohibited by law.  To wit, Trend Micro failed to disclose to the Class members that

19   a purchase of Trend Micro's software subscription involved an automatic renewal of the

20   subscription.

21   136.   By engaging in the above-described misconduct, Trend Micro inserted an

22   unconscionable provision into its contract with Plaintiffs and the other Class members.

23   To wit, Trend Micro inserted an automatic renewal provision in its agreement with the

24   Class members without providing them with adequate notice of this provision.

25   137.   In the alternative to the preceding paragraphs in this Second Claim for

26   Relief, Trend Micro aided and abetted Digital River in carrying out its unlawful enrollment

27   of Plaintiffs and the other Class members in Trend Micro's automatic renewal program,

28   when Trend Micro knew about and substantially assisted Digital River in its misconduct.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    138.   Trend Micro's misconduct violates the Consumer Legal Remedies Act, Civil

2    Code section 1750 *et seq.*

3    139.   As a result of Trend Micro's misconduct, Plaintiffs and the other Class

4    members have suffered harm, for which there is no adequate remedy at law.

5    140.   Pursuant to Civil Code section 1782, on December 15, 2011, Plaintiffs

6    notified Trend Micro of the unlawful acts described in this complaint and demanded that

7    Trend Micro correct and otherwise rectify its misconduct.  Plaintiffs provided Trend Micro

8    with this notice in writing and sent the notice to Trend Micro by Certified Mail—Return

9    Receipt Requested.  Trend Micro responded to this notice on January 18, 2012.  While

10   Trend Micro responded to Plaintiffs' notice, Trend Micro did not give or agree to give an

11   appropriate correction or other remedy as required under Civil Code section 1782(c).

<div align="center">

**PRAYER FOR RELIEF**

</div>

12

13   **WHEREFORE**, Plaintiffs respectfully request judgment as follows:

14   1.   That the Court enter a judgment finding that:

15   a.   Defendants have violated California Business and Professions Code

16   section 17200;

17   b.   Defendants have violated the California Consumer Legal Remedies

18   Act, Civil Code section 1750 *et seq.*

19   2.   That the Court enter a preliminary and permanent injunction restraining

20   Defendants from charging a consumer for an automatic renewal of a software

21   subscription without obtaining the consumer's express and clear authorization and

22   consent.

23   3.   That the Court award damages and monetary relief to Plaintiffs and the

24   Class members as follows:

25   a.   Damages in an amount to be determined at trial in the form of

26   restitution of the money wrongfully charged to Plaintiffs and the other

27   Class members;

28   //

<div style="writing-mode: vertical-rl">KRONENBERGER | ROSENFELD    150 Post Street, Suite 520, San Francisco, CA  94108</div>



b.   Compensatory damages and punitive damages in an amount to be determined at trial under Civil Code section 1780(a);

c.   Statutory damages of $5,000 for each member of the Senior Subclass under Civil Code section 1780(b);

d.   Plaintiffs' attorneys' fees under Civil Code section 1780(e);

e.   Plaintiffs' costs;

4.   Such other relief that the Court determines is just and proper.

Respectfully Submitted,

DATED:  February 2, 2012                    **KRONENBERGER ROSENFELD, LLP**

By: ___s/ Karl S. Kronenberger_____
                    Karl S. Kronenberger

Attorneys for Plaintiffs

**REQUEST FOR JURY TRIAL**

Plaintiff hereby demands a trial of this action by jury.


DATED:  February 2, 2012                    **KRONENBERGER ROSENFELD, LLP**



By:   ___s/ Karl S. Kronenberger_____
                              Karl S. Kronenberger

Attorneys for Plaintiffs