1  Michael A. Geibelson, Bar No. 179970
   MAGeibelson@rkmc.com
2  Lauren E. Wood, Bar No. 280096
   LEWood@rkmc.com
3  **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
   2049 Century Park East, Suite 3400
4  Los Angeles, CA 90067-3208
   Telephone:    310-552-0130
5  Facsimile:    310-229-5800

6  Attorneys for Defendant
   TREND MICRO INC.

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11 SHARON GENTGES, an individual,          Case No. CV11-5574 SBA
   MARION KERSTING, an individual,
12 JOHN NEKORANEC, an individual,          **NOTICE OF MOTION AND MOTION TO**
   LEANNA NEKORANEC, an individual,        **STRIKE; MEMORANDUM OF POINTS**
13 and LYLE J. HALS, an individual,        **AND AUTHORITIES**
   individually and on behalf of a class of
14 similarly situated persons,

15              Plaintiff,                 DATE:     April 10, 2012
                                           TIME:     1:00
16 v.                                      CTRM:     Oakland Crths, Ctrm 1, 4th Flr.

17 TREND MICRO INC., a California          Action Filed: November 16, 2011
   corporation, and DOES 1 through 10,     Amended Complaint Filed: February 2, 2012
18 inclusive,                              Stipulated Response Date: February 23, 2012

19              Defendant.

20

21      TO THIS HONORABLE COURT, AND TO PLAINTIFFS AND THEIR ATTORNEY

22 OF RECORD:

23      PLEASE TAKE NOTICE that on April 10, 2012 at 1:00 p.m., or as soon thereafter as the

24 matter may be heard in Courtroom 1 of the above-entitled court located at 1300 Clay Street, #300,

25 Oakland, CA 94612, Defendant Trend Micro Inc. will and hereby does move this Court to strike

26 Plaintiffs' Second Amended Complaint as follows:

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1.     Plaintiffs' claims under the UCL's unlawful prong for violations of *California Business and Professions Code* § 17602 are improper and all references to *California Business and Professions Code* §17602 are to be stricken for the following reasons:

- Plaintiffs have not alleged that the offers allegedly made to them were offers presented to consumers in the State of California and § 17602's reach is expressly limited to "consumer[s] in this state."
- None of the offers allegedly made to Plaintiffs are alleged to have been made *after* § 17602's operative date of December 1, 2010
- Accordingly, the following page(s) and line references are to be stricken from Plaintiffs' First Amended Complaint:
  - Page 2, line 4, reference to "17602;"
  - Page 16, lines 1 through 15;
  - Page 18, lines 15 through 16, reference to "and Business and Professions Code section 17602;"
  - Page 19, lines 1 through 13.

2.     Plaintiffs' claims under the UCL's unlawful prong for violations of *California Business and Professions Code* § 17602 and for violations of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8401, et. seq. are improper and all references to *California Business and Professions Code* §17602 and 15 U.S.C. § 8401, et. seq. are to be stricken because the software licenses at issue are not "goods" or "services" covered by those statutes.

- Accordingly, the following page(s) and line references are to be stricken from Plaintiffs' First Amended Complaint:
  - Page 2, line 4, references to "17602" and "15 U.S.C. § 8402;"
  - Page 15, lines 15 through 28;
  - Page 16, lines 1 through 15;
  - Page 18, lines 15 through 16, references to "and Business and Professions

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Code section 17602" and "15 U.S.C. § 8403;"

- o   Page 18, lines 17 through 27;
- o   Page 19, lines 1 through 13.

3.   Plaintiffs' claims for enhanced penalties for senior citizens are to be stricken because Plaintiffs have not alleged any plausible theory supporting recovery of enhanced damages for senior citizens.

- •   Accordingly, the following page(s) and line references are to be stricken from Plaintiffs' First Amended Complaint:
  - o   Page 13, lines 4 through 5 and 27 through 28;
  - o   Page 14, lines 27 through 28;
  - o   Page 15, lines 1 through 4;
  - o   Page 22, lines 3 through 4.

4.   Plaintiffs' claims based on aiding and abetting an alleged CLRA violation are improper as no such cause of action exists, and all references to the CLRA in Plaintiffs' aiding and abetting allegations are to be stricken.

- •   Accordingly, the following page(s) and line references are to be stricken from Plaintiffs' First Amended Complaint:
  - o   Page 20, lines 25 through 28.

5.   Plaintiffs' class allegations should be stricken to the extent that they purport to include as class members consumers outside of California. Plaintiffs' claims are based on California law; however, in addition to the inapplicability of California law to extraterritorial transactions, choice of law principles and the policies underlying consumer protection laws necessitate the application of the consumer protection laws of each class member's residence state, making a nationwide class not certifiable.

- •   Accordingly, the following page(s) and line references are to be stricken from Plaintiffs' First Amended Complaint:
  - o   Page 1, line 2, reference to "on behalf of a class of similarly situated

persons;"

     o  Page 2, lines 26 through 27, reference to "and is a class action…different from the Defendant;"

     o  Page 14, lines 22 through 26;

     o  Page 15, lines 8 through 13;

     o  Page 17, lines 2 through 8;

     o  All references to "Class members" within the First Amended Complaint.

**6.**    Plaintiffs' prayer for damages should be stricken for two reasons. First, damages are not available under the UCL. Second, under the CLRA, plaintiffs are required to send defendants a "presuit" notice at least 30 days before commencing an action for damages, pursuant to Civil Code § 1782(a). Plaintiffs commenced their lawsuit *before* sending the required notice.

- Accordingly, the following page(s) and line references are to be stricken from Plaintiffs' First Amended Complaint:

     o  Page 21, lines 23 through 27;

     o  Page 22, lines 1 through 4.

This Motion is made pursuant to *Federal Rules of Civil Procedure*, Rule 12(f) and is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the [Proposed] Order lodged concurrently herewith, the Court's file, and upon such further evidence and argument as may be presented prior to or at the time of the hearing on this Motion.

Respectfully submitted,

DATED: February 23, 2012    **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By:  /s/ Michael A. Geibelson
      Michael A. Geibelson
      Lauren E. Wood
      Attorneys for Defendant
      **TREND MICRO INC.**

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ................................................................. 1

II.   FACTUAL BACKGROUND ................................................................. 2

III.  A MOTION TO STRIKE SHOULD BE GRANTED TO DELETE IMMATERIAL AND IMPERTINENT MATTER ....................................... 2

IV.  REFERENCES TO BUSINESS AND PROFESSIONS CODE §17602 AND 15 U.S.C. §8403 SHOULD BE STRICKEN ................................................ 3

    A.    There Is No Allegation That The Allegedly Illegal Offers Were Made To Any Plaintiff As A "Consumer In This State" ....................................... 3

    B.    The Offers At Issue Were Made Before Section 17602's Operative Date............ 4

    C.    The Software Licenses At Issue Are Not "Goods" Or "Services" Covered By Section 17602 or 15 U.S.C. §8403 ................................................... 6

V.   THE NATIONWIDE CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN ........................................................................................ 8

    A.    Class Allegations Should Be Stricken When a Class Action Cannot Be Maintained ................................................................................. 9

    B.    A Class Action Cannot Be Maintained Because the Application of Consumer Protection Laws from Potentially All Fifty States Destroys Commonality................................................................................ 9

        1.    California Law Cannot Apply Extraterritorially Due to a Lack of Nexus with California. ..................................................... 10

        2.    Choice of Law and the Basic Policies Underlying Consumer Protection Laws Necessitate Application of the Law of Each Class Member's Residence................................................... 11

VI.  PLAINTIFFS' CLAIMS FOR ENHANCED PENALTIES FOR SENIOR CITIZENS SHOULD BE STRICKEN BECAUSE THEY HAVE NOT ALLEGED ANY PLAUSIBLE THEORY SUPPORTING THEIR RECOVERY ........ 13

VII. THE PRAYER FOR DAMAGES SHOULD BE STRICKEN ....................................... 15

VIII. CONCLUSION................................................................................. 17

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aquino v. Credit Control Servs.,*
4 F. Supp. 2d 927 (N.D. Cal. 1998) ............................................................. 3

*Arcilla v. Adidas Promotional Retail Operations, Inc.,*
488 F. Supp. 2d 965 (C.D. Cal. 2007) ......................................................... 3

*Bank of the West v. Superior Court*
(1992) 2 Cal.4th 1254, 10 Cal.Rptr.2d 538 ............................................... 15

*Berry v. American Exp. Publishing, Inc.,*
147 Cal. App. 4th 224, 54 Cal. Rptr. 3d 91 (Cal. Ct. App. 2007) ................ 7

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) ....................................................................... 12

*Cattie v. Wal-Mart Stores, Inc.*
(S.D. Cal. 2007) 504 F.Supp.2d 939 .......................................................... 16

*Churchill Village, L.L.C. v. General Electric Co.,*
169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..................................................... 10

*Clothesrigger, Inc. v. GTE Corp.,*
191 Cal. App. 3d 605, 236 Cal. Rptr. 605 (1987) ..................................... 11

*Diamond Multimedia Systems, Inc. v. Super. Ct.,*
19 Cal. 4th 1036, 80 Cal. Rptr. 2d 828 (1999) ......................................... 10

*Fairbanks v. Superior Court,*
46 Cal. 4th 56, 205 P. 3d 201 (2009) ........................................................... 7

*Ferrington v. McAfee,*
Case No. 10-CV-01455 LHK, 2010 U.S. Dist. LEXIS 106600,
2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ........................................... 7, 8

*General Telephone Co. of Southwest v. Falcon,*
457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ............................ 9

*Hobby Indus. Ass'n of Am. v. Younger,*
101 Cal. App. 3d 358 (1980) ........................................................................ 3

*In re Am. Med. Sys., Inc.,*
75 F.3d 1069 (6th Cir. 1995) ..................................................................... 13

*In re Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) .............................................................. 12, 13

*In re iPhone Application Litig.,*
2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011) ....................... 8

*Klaxon Co. v. Stenor Elec. Mfg. Co. Inc.,*
313 U.S. 487 (1941) ................................................................................... 11

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal.4th 1134, 131 Cal.Rptr.2d 29 (1999) ............................................ 15

*Laster v. T-Mobile USA, Inc.*
(S.D. Cal. 2005) 407 F.Supp.2d 1181 ....................................................... 16

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES
## (continued)

**Page**

*LeDuc v. Kentucky Central Life Ins. Co.*,
  814 F. Supp. 820 (N.D. Cal. 1992) .................................................................. 2

*Metro Publ'g, Ltd. v. San Jose Mercury News, Inc.*,
  861 F. Supp. 870 (N.D. Cal. 1994) .................................................................. 4

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ......................................................... 11

*Norwest Mortgage, Inc. v. Super. Ct.*,
  72 Cal. App. 4th 214, 85 Cal. Rptr. 2d 18 (1999) ................................. 3, 10, 11

*Outboard Marine Corp. v. Superior Court*, (1950) 52 Cal.App.3d 40 .................... 16

*People v. One 1953 Ford Victoria* ,
  48 Cal. 2d 595, 311 P.2d 480 (1957) ....................................................... 3, 10

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 105 S.Ct. 2965, 86 L. Ed. 2d 628 (1985) .................................. 10

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ........................................................ 9, 10, 12, 13

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .............................................................. 9

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983) ........................................................................... 2

*Stearns v. Select Comfort Retail Corp.*,
  No. 08-2746 JF (PVT), 2009 WL 4723366  (N.D. Cal. Dec. 04, 2009) ................ 9

*Szabo v. Bridgepot Machs., Inc.*,
  249 F.3d 672 (7th Cir. 2001) ......................................................................... 13

Von Grabe v. Sprint,
  312 F.Supp.2d 1285 (S.D. Cal. 2003) ............................................................ 16

*Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*,
  114 Cal. App. 4th 548, 7 Cal. Rptr. 3d 844 (2003) ........................................... 8

*Wash. Mut. Bank v. Superior Court*,
  15 P.3d 1071 (Cal. 2001) .............................................................................. 12

*Wershba v. Apple Computer, Inc.*,
  91 Cal. App. 4th 224, 110 Cal. Rptr. 2d 145 (2001) ....................................... 11

*Wofford v. Apple*,
  Case No. 11-CV-0034 AJB N, 2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 9, 2011) ......... 8

**Statutes**

Business and Professions Code § 17600 ............................................................. 6

Business and Professions Code § 17602 ................................................ 1, 2, 3, 4, 5, 6

Business and Professions Code § 17606 ............................................................. 5

California Commercial Code § 9102(a) ............................................................... 7

Civil Code § 1750 .......................................................................................... 15

- iii -

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

Civil Code § 1761 ........................................................................................ 7, 13

Civil Code § 1770 ....................................................................................6, 12, 15

Civil Code § 1780 ........................................................................................12, 13

Civil Code § 1782 ........................................................................................15, 16

**Other Authorities**

15 U.S.C. §8402 .............................................................................................. 2

15 U.S.C. §8403 .............................................................................3, 1, 3, 6, 8

**Rules**

Federal Rules of Civil Procedure 12(f) ......................................................... 2

Federal Rules of Civil Procedure 17200 .................................................3, 12, 15

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**SUMMARY OF ARGUMENT**

This action arises out of transactions between five plaintiffs and a non-party, Digital River, Inc. for the initial purchase and renewal of software licenses. As is explained in the concurrently filed motion to dismiss, Defendant Trend Micro Inc. did not participate in those transactions and the action should be dismissed for a lack of subject matter jurisdiction because plaintiffs' claimed injuries are not fairly traceable to any conduct of Trend Micro. If Trend Micro's motion to dismiss is not granted, numerous aspects of the First Amended Complaint (FAC) should be stricken to remove irrelevant and impertinent matter, and avoid a further waste of the parties' and the court's resources.

References to Business and Professions Code Section 17602 should be stricken because plaintiffs have not alleged they were "consumer[s] in this state" at the time the allegedly illegal offers were made to them – a prerequisite to a violation of that statute. References to Section 17602 should also be stricken because all of the allegedly illegal offers were made before that Section's became operative on December 1, 2010. And references to both Section 17602 and 15 U.S.C. §8403 should be stricken because both are only concerned with transactions involving "goods" and "services". However, the courts have held that software of the type involved in the transaction at issue here is an intangible that cannot be characterized as a good or a service.

The class allegations should also be stricken to the extent they purport to seek certification of a nationwide class. Differences in the fifty states' consumer protection laws foreclose a nationwide action upon the claims pled.

Furthermore, plaintiffs' claims for enhanced penalties for senior citizens should be stricken because plaintiffs have not alleged any plausible theory supporting their recovery.

Finally, the prayer for damages should be stricken. Although restitution is available under the California's Unfair Competition Law (UCL), the Consumers Legal Remedies Act (CLRA) is the only cause of action which permits the recovery of damages. But damages under the CLRA are only available if they are not sought until more than 30 days has passed since the claimant

60564463.1

gave notice of the intent to bring a CLRA claim for damages. Here, the original complaint sought damages, before the passage of 30 days after notice was given. The rule against the early pursuit of damages is strictly construed and precludes plaintiffs from recovering damages in this action.

## II.

## FACTUAL BACKGROUND

Plaintiffs admit they are all residents of other states: Gentges (Missouri); Kersting (Wisconsin); John and Leanna Nekoranec (Arizona); and Hals (New Jersey). (FAC at ¶¶17-21.) Nevertheless, they seek to a allege a putative national class action for violations of California's UCL and CLRA based upon their transactions for the purchase of Trend Micro computer security and anti-virus software. (FAC at ¶2.) They allege that the trendmicro.com website where the software is advertised and sold does not adequately disclose that the software license will automatically renew at the expiration of the initial term, or thereafter. (FAC at ¶5.) They allege that the failures to disclose and the charging of the credit cards they provided as part of the initial sales of software licenses violate 15 U.S.C. §8402 and California Business and Professions Code Section 17602, as well as the UCL and CLRA. (FAC at ¶7.) For these acts, they bring claims for violations of the UCL and CLRA. (FAC ¶¶114-129, and ¶¶130-140.) While these claims cannot be sustained for the reasons set forth in the motion to dismiss, they also require several matters to be stricken from the complaint on this motion.

## III.

## A MOTION TO STRIKE SHOULD BE GRANTED TO DELETE IMMATERIAL AND IMPERTINENT MATTER

Rule 12(f) of the *Federal Rules of Civil Procedure* allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." A motion to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "[A] motion to

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    strike may be used to strike any part of the prayer for relief when the damages sought are not

2    recoverable as a matter of law." *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F.

3    Supp. 2d 965, 968 (C.D. Cal. 2007).

4                                                    **IV.**

5    **REFERENCES TO BUSINESS AND PROFESSIONS CODE §17602 AND 15 U.S.C. §8403**

6                                    **SHOULD BE STRICKEN**

7         All references to *Business and Professions Code* Section 17602 and 15 U.S.C. Section

8    8403 should be stricken from the Complaint because they are immaterial and impertinent to any

9    matter to be decided.

10   **A.      There Is No Allegation That The Allegedly Illegal Offers Were Made To Any**

11           **Plaintiff As A "Consumer In This State"**

12        Plaintiffs have judicially admitted that their residences are all outside of California – in

13   Arizona, Missouri, New Jersey and Wisconsin. Complaint ¶¶17-21. But they have nowhere

14   alleged that they were inside California when the software offers at issue were made to them.

15   California state laws are not presumed to have extraterritorial effect, and *Business and*

16   *Professions Code* Section 17602 expressly limits its reach to offers made "to a consumer in this

17   state."[1] *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222, 85 Cal. Rptr. 2d 18

18   (1999); *People v. One 1953 Ford Victoria*, 48 Cal. 2d 595, 598-599, 311 P.2d 480 (1957). Thus,

19   plaintiffs have not alleged any plausible theory showing a violation of *Business and Professions*

20   *Code* Section 17602.

21        While the UCL borrows other statutes for its "unlawful" prong, a defense to the statute

22   underlying a UCL claim for unlawfulness is also a defense to the UCL claim itself. *See Hobby*

23   *Indus. Ass'n of Am. v. Younger*, 101 Cal. App. 3d 358, 372 (1980); *see also Aquino v. Credit*

24   *Control Servs.*, 4 F. Supp. 2d 927, 930 (N.D. Cal. 1998) (dismissing Section 17200 action where

25   plaintiff failed to "set forth any factual allegations that the defendant's approach violated any state

26   or federal provisions"); *Metro Publ'g, Ltd. v. San Jose Mercury News, Inc.*, 861 F. Supp. 870, 881

---

[1] The statute provides in relevant part as follows: " (a) It shall be unlawful for any business making an automatic renewal or continuous service offer *to a consumer in this state* to do any of the following:..." Bus. & Prof. Code § 17602

1   (N.D. Cal. 1994) (dismissing Section 17200 claim after underlying trademark infringement and

2   dilution claims were dismissed).

3          In the absence of a contrary allegation, Plaintiffs' residences (the presumptive locations

4   where the subject offers were made to them over the Internet) are a defense to a violation of

5   Section 17602. Because there is no liability under Section 17602 directly, there cannot be liability

6   under the UCL either. Although Section 17602 is not referred to expressly in the CLRA count, it

7   is incorporated by reference. (FAC at ¶130.) In the absence of specificity, all that can be gleaned

8   from the count related to Section 17602 is the vague reference to rights or obligations "which

9   were prohibited by law." (FAC ¶135.) However, courts give no weight to such legal conclusions.

10  *Twombly*, 550 U.S. at 570.

11         In the absence of an allegation that plaintiffs were "consumer[s] in this state" when the

12  offers were made to them, there can be no liability under Section 17602 regardless of how

13  couched in the complaint.

14  **B.**     **The Offers At Issue Were Made Before Section 17602's Operative Date**

15         Plaintiffs' complaint alleges that Trend Micro's practices violated *Business and*

16  *Professions Code* Section 17602(a) and (b). (FAC ¶¶ 111, bullets 4-6; ¶¶ 124-126 [sic].)

17  Respectively, those subdivisions prohibit certain acts or omissions at the time of (a) "*making* an

18  automatic renewal or continuous service offer," and (b) "*making* automatic renewal or continuous

19  service offers". In other words, Section 17602's prohibitions relate only to what must be done at

20  the time of making the *initial* offer. They do not prescribe what must be done, or what is

21  prohibited, at the time a consumer is charged for a subsequent renewal. This construction is

22  confirmed by subdivision (d). It provides:

23         (d) The requirements of this article shall apply ***only prior to the completion of the
       initial order for the automatic renewal or continuous service***, except as follows:
24

25             (1) The requirement in paragraph (3) of subdivision (a) may be fulfilled
          after completion of the initial order.

26             (2) The requirement in subdivision (c) shall be fulfilled prior to
          implementation of the material change.
27

28  (Emphasis added.) Subdivision (a)(3), which can be completed "after the completion of the initial

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

order," concerns the provision of an acknowledgement containing the terms of the order.[2] And subdivision (c) concerns the giving of notice of any material change in the terms of the automatic renewal or continuous service offer.[3] Both of these could only logically be performed after the completion of the initial order anyway.[4] And neither of them is alleged to have been violated.

Section 17602 (a) and (b) are alleged to have been violated. But none of plaintiffs' initial transactions occurred after Section 17602's operative date. *Business and Professions Code* Section 17606 provides that Section 17602 and the rest of the article "shall become operative on December 1, 2010." All of the plaintiffs' initial transactions occurred *before* December 1, 2010: Gentges – October 2009 and October 2010 (FAC ¶72-76); Kersting – October 2009 (FAC ¶80-83); Nekoranec – mid-2009 (FAC91-92); Hals – November 2010 (FAC ¶100).

There is no indication in the text of the statute or its legislative history that the statute was intended to apply retroactively. Indeed, to apply the statute retroactively would raise serious due process concerns by declaring illegal initial transactions that occurred months or years earlier that could not be cured.

Because none of plaintiffs' transactions was covered by Section 17602, all references to that statute should be stricken.

---

[2] Subdivision (a)(3) provides in full: "(a) It shall be unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following: (3) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

[3] Subdivision (c) provides: "In the case of a material change in the terms of the automatic renewal or continuous service offer that has been accepted by a consumer in this state, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer."

[4] That is, a business could not send a confirmation or give notice of a material change in terms before the initial order is complete. Under this interpretation of the statute, the adoption of subdivision (d) is necessary to avoid an absurdity. If Section 17602 were interpreted as creating a perpetual prohibition that continued after the initial offer, subdivision (d) would be superfluous.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**C.**   **The Software Licenses At Issue Are Not "Goods" Or "Services" Covered By Section 17602 or 15 U.S.C. §8403**

According to their express language, Business and Professions Code Section 17602 and the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §8403 are concerned only with transactions involving "goods" and "services". However, the courts have held that software of the type at issue here is neither of these; it is considered an intangible. And thus transactions involving software cannot be the subject of a violation of either statute.

Business and Professions Code Section 17602(a) makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:…" Thus, only offers to consumers are subject to the statute. Section 17601(d) defines (d) "Consumer" to mean "any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, for household purposes." With respect to the transactions at issue here, plaintiffs are not "consumers" within the meaning of Business and Professions Code Section 17600, et seq. because software is an intangible that is not considered to be a "good" or "service".

Like Section 17600, *et seq.*, the coverage of 15 U.S.C. §8403 is also expressly limited to charges for "goods or services." It provides, "It shall be unlawful for any person to charge or attempt to charge any consumer for any ***goods or services*** sold in a transaction effected on the Internet through a negative option feature (as defined in the Federal Trade Commission's Telemarketing Sales Rule in part 310 of title 16, Code of Federal Regulations), unless the person …." does the things prescribed by the statute. (Emphasis added.)

Plaintiffs' claims for all concern the initial and renewal sales of various types of Trend Micro software (or more properly licenses to use the software). As is explained in the motion to dismiss, transactions involving such software cannot be the subject of a CLRA violation because software is not a "good" or "service" within the meaning of the CLRA. In the absence of another statutory definition, the conclusion that software is not a "good" or "service" applies with equal force to require that references to Section 17602 and 15 U.S.C. §8403 be stricken.

Civil Code Section 1770 prohibits certain conduct in a transaction "intended to result or

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

which results in the sale or lease of goods or services...." "Goods" and "services" are defined in

Civil Code Section 1761(a-b) as follows:

> (a) "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.

> (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

Interpreting and applying these definitions, courts have uniformly held that transactions

involving software are not covered by the CLRA because software is not a "good" or a "service".

For example, *Ferrington v. McAfee*, Case No. 10-CV-01455 LHK, 2010 U.S. Dist. LEXIS

106600, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010), involved a claim against McAfee which,

like Trend Micro, is a "provider of computer security software whose products may be purchased

and downloaded from the McAfee website." *Id.* at \*1-2. The complaint also named Arpu, Inc., "a

company that places online advertisements that enable consumers to purchase products 'with a

single click, using credit card information already on file.'" *Id.* at \*2. "Arpu partnered with

McAfee to place ads on McAfee's website that would appear after a customer completed a

purchase of a McAfee product. ... If a customer chooses to subscribe to the product or service

offered in the Arpu ad, McAfee transmits their billing information to Arpu for use in the purchase

of the Arpu product...." *Id.* at \*2. Plaintiffs purchased McAfee's anti-virus program from a

McAfee website, clicked on a "Try It Now" ad provided by Arpu, that permitted the transfer of

credit card information from McAfee to Arpu, and plaintiffs were charged for additional software.

*Id.* at \*2-3. On motion, the Court dismissed Ferrington's CLRA count. In addition to relying on

the above statutes, the Court agreed that:

> [S]oftware, like insurance and credit, is an intangible chattel under California law and is therefore not encompassed in the CLRA's definition of a 'good.' *See Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61, 205 P. 3d 201 (2009) (holding that life insurance is not a tangible chattel and therefore not a good under the CLRA); *Berry v. American Exp. Publishing, Inc.*, 147 Cal. App. 4th 224, 229, 54 Cal. Rptr. 3d 91 (Cal. Ct. App. 2007) (holding that a credit card is not a good for purposes of the CLRA). ... Section 9102(a) of the California Commercial Code,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

… provides definitions of terms that apply to secured transactions. Section 9102(a) defines 'general intangibles' specifically to include software, Cal. Comm. Code § 9102(a)(42), and expressly excludes computer programs from the definition of 'goods,' *id.* § 9102(44). The Court also note[d], in support of Defendant's position, that at least one California appellate court has held that a database stored on a computer is not 'physical' or 'tangible' in the 'ordinary and popular sense' of those words. *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556, 7 Cal. Rptr. 3d 844 (2003). In so holding, the court relied on and approved of a decision from the Eastern District of Virginia, which held that "computer data, software and systems are not 'tangible' property in the common sense understanding of the word" and distinguished the tangible medium in which such data and programs are stored from the intangible software and information itself. *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th at 557 (quoting *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 462 (E.D. Va. 2002).

*Ferrington*, 2010 U.S. Dist. LEXIS 106600 at *53-*54. Ultimately, the Court held that the "express limitation of goods to 'tangible chattels' must be given meaning, and current California law suggests that these words exclude software from the Act's coverage. The Court therefore concludes that the software Plaintiffs purchased is not a good covered by the CLRA."[5] *Id.* at *57. Relying upon *Ferrington*, the Courts in *Wofford v. Apple*, Case No. 11-CV-0034 AJB N, 2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 9, 2011) and *In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011), have reached the same result.

Because Section 17602 and 15 U.S.C. §8403 do not apply to software purchases of the type at issue here, references to those statutes should be stricken.

## V.

## THE NATIONWIDE CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN

Plaintiffs attempt to assert claims on behalf of a nationwide class of "all persons: a) who purchased a software membership product on the Trend Micro website, and b) who were charged for the automatic renewal of that software product by Trend Micro on or after November 15, 2007 (the "Class")." Complaint at ¶107. Plaintiffs bring their claims under California law despite the

---

[5] Although the Hosted Reseller Agreement refers to the sale of "*Products*" in various places, the definitions dispel any notion that the software sold to plaintiffs is a "good" or "service" within the meaning of the CLRA. "*Products*" is defined in the General Terms and Conditions as "A copy of the Company's [Trend Micro's] *Software* and/or *Non-Software Product, Documentation*, and *EULA*, if any, packaged in computer readable form together for electronic delivery on www.digitalriver.com (or equivalent) and/or in tangible packaged form for delivery…." (Hoen Decl. ¶2; Ex. "B" at 8 to Motion to Dismiss.) "*Software*" is defined in turn as "The executable code for *Products* to an *End User* through a single order." *Id.*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

fact that none of the named Plaintiffs is a California resident. Rather, Plaintiffs are residents of Missouri, Wisconsin, Arizona, and New Jersey.[6] Extraterritoriality concerns and choice of law require that the laws of the states of each Plaintiff and of each member of the nationwide class apply to each transaction at issue. Application of the law of each class members' state "would make this case unmanageable as a class action" and warrant striking the class allegations. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011) (upholding district court's decision to strike class allegations and dismiss plaintiffs' claims where "different laws would govern the class members' claims"); *see also Zinser*, 253 F.3d at 1189 (upholding denial of class certification, noting that "Where the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will 'compound the []  disparities' among class members from the different states." (citations omitted)).

A.   **Class Allegations Should Be Stricken When a Class Action Cannot Be Maintained**

"[T]he Supreme Court has noted that '[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim.'" *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d at 990-91 (N.D. Cal. 2009) (granting motion to strike class allegations ; *see also Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 WL 4723366, *14 (N.D. Cal. Dec. 04, 2009) (granting motion to strike class allegations, holding "[I]t is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources").

B.   **A Class Action Cannot Be Maintained Because the Application of Consumer Protection Laws from Potentially All Fifty States Destroys Commonality**

A class action cannot be maintained where the class members' claims would each need to

---

[6] As alleged, Plaintiff Hals is not a member of the class because he is not alleged to have engaged in an online transaction. See Motion to Dismiss at Part V.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    be analyzed pursuant to the laws of the state where they reside because the application of

2    numerous state statutes defeats commonality. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d

3    943, 945-46 (6th Cir. 2011).

4    **1.    California Law Cannot Apply Extraterritorially Due to a Lack of Nexus with**

5    **California.**

6    Plaintiffs have brought claims under the UCL and the CLRA. Although these claims are

7    brought under California statutes, none of the Plaintiffs are California residents and their subject

8    transactions, which based on their aiding and abetting claims, were concededly with Digital

9    River, a Delaware corporation with its principal place of business located in Minnesota. See

10   Motion to Dismiss at Part IV.

11   Courts ordinarily presume the California Legislature does not intend its statutes to have

12   force or operation beyond the state's boundaries. *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal.

13   App. 4th 214, 222, 85 Cal. Rptr. 2d 18 (1999); *People v. One 1953 Ford Victoria*, 48 Cal. 2d 595,

14   598-599, 311 P.2d 480 (1957). Accordingly, courts do not construe a statute as regulating

15   transactions outside the state unless a contrary intention is clearly expressed or reasonably can be

16   inferred from the language or purpose of the statute. *Diamond Multimedia Systems, Inc. v. Super.*

17   *Ct.*, 19 Cal. 4th 1036, 1059-1060, 80 Cal. Rptr. 2d 828 (1999).

18   Beyond California's presumption against the extraterritorial application of its laws, a

19   California court's adjudication of a nonresident's claim which lacks a nexus with the forum state

20   raises significant due process problems. *Churchill Village, L.L.C. v. General Electric Co.*, 169 F.

21   Supp. 2d 1119, 1126-27 (N.D. Cal. 2000). Even in the case of a putative class action, and

22   although a forum state may have personal jurisdiction over the defendant, the forum still must

23   have a significant contact or aggregation of contacts to the claims asserted to ensure that

24   application of the forum law to each claim is not arbitrary or unfair. *Phillips Petroleum Co. v.*

25   *Shutts*, 472 U.S. 797, 821-822, 105 S.Ct. 2965, 86 L. Ed. 2d 628 (1985). The existence of

26   personal jurisdiction over the defendant does not alone permit application of the forum law to the

27   claims of nonresident plaintiffs. 472 U.S. at 821. Thus, California courts only permit the

28   extraterritorial application of California laws when there is a significant nexus to California.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613, 236 Cal. Rptr. 605 (1987),

2   (headquarters in and fraudulent misrepresentations contained in literature prepared in California.);

3   *see also Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242, 110 Cal. Rptr. 2d 145

4   (2001) (constitutional concerns were satisfied because defendant was a California corporation and

5   the brochures at issue were prepared and distributed in California). The UCL does not support

6   claims by non-California residents where none of the alleged misconduct or injuries occurred in

7   California. *Id.*; *Churchill Village*, 169 F. Supp. 2d at 1126 (N.D. Cal. 2000). UCL claims must

8   have a nexus with California to avoid "significant due process problems." *Churchill Village*, 169

9   F. Supp. 2d at 1126-27 (quotations omitted). The CLRA also does not apply extraterritorially for

10  the same reasons. *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal. 2006);

11  *Norwest*, 72 Cal. App. 4th at 227.

12          In this case, the transactions at issue took place with Digital River, which is based in and

13  conducts its operations from Minnesota. Plaintiffs' allegations that Trend Micro aided and abetted

14  Digital River lack any allegation that Trend Micro's alleged conduct took place in California, and

15  the Hosted Reseller Agreement, between Digital River and Trend Micro, referenced by Plaintiffs

16  is actually with the Japanese corporation Trend Micro, and not the Trend Micro California

17  subsidiary. See Motion to Dismiss at Part IV.

18          **2.      Choice of Law and the Basic Policies Underlying Consumer Protection Laws**

19                   **Necessitate Application of the Law of Each Class Member's Residence.**

20          A federal court sitting in diversity must look to the forum state's choice of law rules to

21  determine the controlling substantive law. *Klaxon Co. v. Stenor Elec. Mfg. Co. Inc.*, 313 U.S. 487,

22  496 (1941). California applies the governmental interest approach to conflict of law questions,

23  which is a three step process: first, the applicable rule of law in each potentially concerned state

24  must be identified and it must be shown that it materially differs from the law of California;

25  second, if the laws are materially different, then a determination is made as to what interest each

26  state has in having its own law applied to the case; and third, if the laws are materially different

27  and each state has an interest in having its own law applied, the court must "select the law of the

28  state whose interests would be more impaired if its laws were not applied." *Zinser*, 253 F.3d at

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   1187 (citing *Wash. Mut. Bank v. Superior Court*, 15 P.3d 1071, 1080-81 (Cal. 2001)).

2       Arizona, Missouri, New Jersey, and Wisconsin – the states where the named Plaintiffs'

3   reside – each have their own consumer fraud statutes, none of which provides for the borrowing

4   of another statute as the predicate violation as § 17200 of the UCL does. Thus, Plaintiffs'

5   purported ability to bring a UCL claim based on an alleged ROSCA violation - for which no

6   private right of action exists – materially differs from Arizona, Missouri, New Jersey, and

7   Wisconsin law. Additionally, Arizona and New Jersey differ from California in that it makes

8   consumer fraud unlawful "whether or not any person has in fact been misled, deceived or

9   damaged thereby" (and limits the people who may bring suit and specifies the relief available).

10  Arizona Stat §§44-1522, 44-1531, 44-1532; NJ Stat. § 56:8-2; *compare* CLRA § 1780(a) ("Any

11  consumer *who suffers any damage as a result* of the use or employment by any person of a

12  method, act, or practice declared to be unlawful by Section 1770 may bring an action…"). Given

13  that the class alleged potentially encompasses class members from all fifty (50) states, the

14  consumer fraud statutes in all fifty states would need to be compared to California. Due to the

15  necessary application of this "individualized choice of law analysis to each plaintiff's claim, the

16  proliferation of disparate factual and legal issues is compounded exponentially…" *Zinser*, 253

17  F.3d at 1188 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 n.15 (5th Cir. 1996)).

18      In consumer fraud cases, the state with the greatest interest in regulating the conduct "is

19  the State where the consumers—the residents protected by *its consumer*-protection laws—are

20  harmed by it." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011). This is

21  especially true where, as here, plaintiffs have alleged wrongful conduct by companies in two

22  different states (despite the fact that Plaintiffs chose not to name Digital River as a party). When

23  the allegedly harmful conduct occurs in separate states, the interest of any one state in regulating

24  the source of the harm is diluted, yet the interest of each consumer's state in regulating the harm

25  that occurred to its residents is in no way minimized. *Id.* at 946-47. Furthermore, the basic

26  policies underlying consumer-protection laws is to protect residents of the state, and the notion

27  that "one state's law would apply to claims by consumers throughout the country…is a novelty."

28  *Id.* (quoting *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002)).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Finally, the lack of a nexus to California and the inappropriateness of extraterritorial application of California law to the transactions at issue requires the application of the law of each class member's state of residence. Given the potential for fifty stets' laws to apply, class treatment is improper because the differing legal requirements defeat commonality. This conclusion is consistent with numerous decisions across the country. *E.g. Zinser*, 253 F.3d at 1189; *Pilgrim*, 660 F.3d at 946; *In re Bridgestone/Firestone*, 288 F.3d at 1016 ("Because these claims must be adjudicated under the law of so many jurisdictions…a single nationwide class is not manageable"); *Szabo v. Bridgepot Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("Differences of [state law] cut strongly against nationwide classes…"); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1995) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law").

## VI.

### PLAINTIFFS' CLAIMS FOR ENHANCED PENALTIES FOR SENIOR CITIZENS SHOULD BE STRICKEN BECAUSE THEY HAVE NOT ALLEGED ANY PLAUSIBLE THEORY SUPPORTING THEIR RECOVERY

While seniors can be awarded statutory damages in addition to other damages under Civil Code Section 1780(b)(1) under some circumstances, it is not automatic. Rather, specific factual showings are required, none of the facts of which are alleged in the complaint. Section 1780(b)(1) explains:

> Any consumer who is a senior citizen or a disabled person, as defined in subdivisions (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedies specified therein, up to five thousand dollars ($5,000) *where the trier of fact does all of the following*: (A) Finds that the consumer has suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct. (B) Makes an affirmative finding in regard to one or more of the factors set forth in subdivision (b) of Section 3345.

The economic damage resulting from the purchase of an antivirus program for a computer cannot be construed to be "substantial" when compared to the value of the software received and the indubitable cost of the computers the senior citizen plaintiffs purchased, much less the loss of replacing those computers if they went unprotected from viruses, spyware, and the other threats to

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   computer and personal security and operability.

2          Section 3345 provides an even brighter line to show that plaintiffs have not alleged any

3   plausible theory for the recovery of enhanced damages. Section 3345 requires the trier of fact to

4   consider a variety of factors beyond age, but generally in an attempt to determine whether the

5   practice at issue was intended to take advantage of senior citizens in some meaningful way that

6   disproportionately affects them compared to younger consumers. Subdivision 3345(b)(1) requires

7   a defendant to know or be on constructive notice that its conduct "was directed to one or more

8   senior citizens…." Subdivision 3345(b)(2) requires a showing of "loss or encumbrance of a

9   primary residence, principal employment, or source of income; substantial loss of property set

10  aside for retirement, or for personal or family care and maintenance; or substantial loss of

11  payments received under a pension or retirement plan or a government benefits program, or assets

12  essential to the health or welfare of the senior citizen or disabled person." Finally, subdivision

13  3345(b)(3) requires the consideration of "Whether one or more senior citizens … are substantially

14  more vulnerable than other members of the public to the defendant's conduct because of age, poor

15  health or infirmity, impaired understanding, restricted mobility, or disability, and actually

16  suffered substantial physical, emotional, or economic damage resulting from the defendant's

17  conduct."

18         None of these is alleged, or is a reasonable and cognizable result of the purchase of an

19  antivirus program. Indeed, plaintiffs' allegations seeking to hold the class together based upon

20  deception suggests that seniors are not more vulnerable than others to the fate of being charged

21  for something they need to protect themselves from – computer viruses and spyware, and other

22  computer security threats.[7] Put differently, there is nothing alleged that suggests seniors are more

23  vulnerable, were the target of defendant's conduct, or suffered a loss of the kind that would

24  warrant enhanced damages. Without a plausible theory and allegations of loss, the prayer for

25  enhanced damages should be stricken.

26  _____

27  [7] If seniors are in a subclass of consumers because of their unique characteristics, class
    certification could never be granted for a lack of commonality because individual inquiry will be
28  required concerning their ages, and whether and to what extent they suffered the injury of the type
    that warrants enhanced damages.

## VII.

## <u>THE PRAYER FOR DAMAGES SHOULD BE STRICKEN</u>

Civil Code Section 1782 (a) required that plaintiffs send a "presuit" notice at least 30 days before commencing an action for damages under the CLRA. Plaintiffs' original complaint was filed on November 16, 2011 and included a prayer for damages. However, the required "presuit" notice was not sent until a month after that, on December 15, 2011. Section 1782 is required to be strictly construed. And therefore plaintiffs' claims for damages in the First Amended Complaint must be stricken.

Section 1782(a) of the Consumers Legal Remedies Act requires that:

> Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:

> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.

> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

The original complaint was filed on November 16, 2011. (Dkt. 1.) It alleged two counts for violations of the Unfair Competition Law (Business and Professions code §17200, *et seq.*) and the CLRA (Civil Code §1750 *et seq.*). The "Prayer For Relief" in the Complaint, among other things, prayed "That the Court award ***damages and monetary relief*** as follows: **Damages** in an amount to be determined at trial in the form of restitution of money wrongfully charged to Plaintiffs and the other class members." (Dkt .1, Prayer ¶3, at 17:8-11.)

A UCL action is equitable in nature; damages cannot be recovered. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144, 131 Cal.Rptr.2d 29 (1999) (citing *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538). Indeed, there is a stark difference between damages and restitution, even when plaintiffs attempt to characterize damages as disgorgement. *Korea Supply*, 29 Cal.4th at 1150-51. Thus, plaintiffs' original, November 16, 2011 prayer for damages could only have been based upon plaintiffs' claim under the CLRA. (See Complaint at Prayer at ¶3.)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

However, the only "presuit" notice alleged to have been given is alleged to have been given on December 15, 2011. (FAC ¶140.) Thus, plaintiffs' prayer for damages a month after plaintiffs they commenced their action for damages was premature, and plaintiffs cannot seek damages under the CLRA in this action.

Where a plaintiff fails to give the required notice, a claim for damages under the CLRA should be dismissed with prejudice. *Cattie v. Wal-Mart Stores, Inc.* (S.D. Cal. 2007) 504 F.Supp.2d 939, 950; *Von Grabe v. Sprint*, 312 F.Supp.2d 1285, 1304 (S.D. Cal. 2003). "In the face of the clear, unambiguous, and unequivocal language of the statute," substantial compliance with the notice requirement does not suffice. *Outboard Marine Corp. v. Superior Court*, (1950) 52 Cal.App.3d at 40. This clear purpose of the CLRA's notice requirement "may only be accomplished by a literal application of the notice provisions." *Id*. at 41.

*Laster v. T-Mobile USA, Inc.* (S.D. Cal. 2005) 407 F.Supp.2d 1181, explained that where a plaintiff fails to give a prior timely notice of CLRA violations, the claim should be dismissed with prejudice. *Id*. at 1195. In reaching this result, the court noted that "neither *Outboard Marine* nor *Von Grabe* drew a distinction between inadvertence or willful disregard of the notice requirements. Both courts held that a claim for damages under the CLRA requires *strict* compliance with the notice requirements set forth in § 1782." *Laster*, 407 F.Supp.2d at 1197. In dismissing plaintiff's CLRA damage claim with prejudice, the *Von Grabe* Court relied on *Outboard Marine* in explaining that "*strict* application of the [notice] requirement was necessary" to achieve the goals of the CLRA.

Strict or not, plaintiff's December 15, 2011 letter unquestionably failed to give timely notice of the action for damages that plaintiffs commenced a month earlier on November 16, 2011. Accordingly, the prayer for damages should be stricken.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

## VIII.

## CONCLUSION

For all the foregoing reasons, the specified portions of the FAC should be stricken.

DATED: February 23, 2012        **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**


                                  By:   /s/  Michael A. Geibelson
                                        Michael A. Geibelson
                                        Lauren E. Wood
                                        Attorneys for Defendant
                                        **TREND MICRO INC.**