1   Michael A. Geibelson, Bar No. 179970
    MAGeibelson@rkmc.com
2   Lauren E. Wood, Bar No. 280096
    LEWood@rkmc.com
3   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    2049 Century Park East, Suite 3400
4   Los Angeles, CA 90067-3208
    Telephone:    310-552-0130
5   Facsimile:    310-229-5800

6   Attorneys for Defendant
    TREND MICRO INC.

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  SHARON GENTGES, an individual,            Case No. CV11-5574 SBA
    MARION KERSTING, an individual,
12  JOHN NEKORANEC, an individual,            **NOTICE OF MOTION AND MOTION TO**
    LEANNA NEKORANEC, an individual,          **DISMISS; MEMORANDUM OF POINTS**
13  and LYLE J. HALS, an individual,          **AND AUTHORITIES**
    individually and on behalf of a class of
14  similarly situated persons,

15                 Plaintiff,                 Date:   April 10, 2012
                                              Time: 1:00 p.m.
16  v.                                        Ctrm: 1

17  TREND MICRO INC., a California            Complaint Filed:    November 16, 2011
    corporation, and DOES 1 through 10,
18  inclusive,

19                 Defendant.

20

21          TO THIS HONORABLE COURT, AND TO PLAINTIFFS AND THEIR ATTORNEY

22  OF RECORD:

23          PLEASE TAKE NOTICE that on April 10, 2012 at 1:00 p.m., or as soon thereafter as the

24  matter may be heard in Courtroom 1 of the above-entitled court located at 1300 Clay Street, #300,

25  Oakland, CA 94612, Defendant Trend Micro Inc. will and hereby does move pursuant to Federal

26  Rule of Civil Procedure 12(b)(1) and (b)(6) for an order dismissing this action on the grounds that

27  the Court lacks subject matter jurisdiction over the action, and plaintiffs have failed to state a

28  claim upon which relief can be granted as follows:

60553909.10                                              NOTICE AND MOTION TO DISMISS

*(left margin, vertical text)* ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1.  Plaintiffs' alleged injury is not fairly traceable to any action of Trend Micro;

2.  There is no subject matter jurisdiction over Plaintiff Hals' claims because he is not a member of the defined putative class;

3.  Plaintiffs have no standing to sue for a violation of the UCL for a lack of redressability;

4.  Plaintiffs' alternate aiding and abetting theory does not cure the absence of subject matter jurisdiction;

5.  Plaintiffs' CLRA count should be dismissed for their failure to allege any transaction involving a "good" or "service";

6.  Plaintiffs' CLRA count should be dismissed for their failure to file the affidavits required by Civil Code § 1780(d); and

7.  Plaintiffs have not alleged standing to sue under the UCL or for damages under the CLRA

This Motion is brought following the January 25, 2012 conference of counsel concerning the grounds for the motion.

This Motion is and will be based upon this Notice of Motion and Motion, the attached Memorandum of Points & Authorities, the Declarations of Melissa Hoen, Mitch Drew and Wilson Lau, the Request for Judicial Notice filed herewith, and upon such other and further evidence and argument as may be presented at and before the hearing on this Motion.

Respectfully submitted,

DATED: February 23, 2012          **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**


By:   /s/  Michael A. Geibelson
Michael A. Geibelson
Lauren E. Wood
Attorneys for Defendant
**TREND MICRO INC.**

**TABLE OF CONTENTS**

**Page**

I.     SUMMARY OF ARGUMENT ................................................................. 1

II.    FACTUAL BACKGROUND .................................................................. 2

III.   THE COURT LACKS SUBJECT MATTER JURISDICTION, AND
       PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF CAN
       BE GRANTED .......................................................................................... 3

IV.    PLAINTIFFS' ALLEGED INJURY IS NOT FAIRLY TRACEABLE TREND
       MICRO .................................................................................................... 5

       A.    The Complaint Shows Trend Micro Was Not Involved In Plaintiffs'
             Transactions .................................................................................... 6

             1.    Plaintiffs' Screenshots Show Digital River Controlled The
                   Transactions ............................................................................ 6

             2.    The Digital River – Trend Micro Agreement Confirms Digital
                   River Controlled The Online Store And Plaintiffs' Transactions ............. 7

       B.    Other Evidence Confirms Trend Micro Was Not Involved In Plaintiffs'
             Transactions .................................................................................... 9

             1.    The Web Pages At Issue Were Developed by Digital River ..................... 9

             2.    Initial and Renewal Payments Have Been Processed by Digital
                   River ....................................................................................... 9

             3.    Order Confirmations and Renewal Notifications Are Sent By
                   Digital River ............................................................................ 10

             4.    Digital River Processed The Subject Transactions ................................ 10

V.     THERE IS NO SUBJECT MATTER JURISDICTION OVER PLAINTIFF
       HALS' CLAIMS BECAUSE HE IS NOT A MEMBER OF THE DEFINED
       PUTATIVE CLASS ............................................................................... 13

VI.    PLAINTIFFS HAVE NO STANDING TO SUE FOR A VIOLATION OF THE
       UCL FOR A LACK OF REDRESSABILITY ............................................ 14

VII.   PLAINTIFFS' ALTERNATE AIDING AND ABETTING THEORY DOES NOT
       CURE THE ABSENCE OF SUBJECT MATTER JURISDICTION ........................ 15

       A.    Because The UCL and CLRA Do Not Apply Extraterritorially, Trend
             Micro Cannot Be Held Liable for Aiding and Abetting Conduct that Is
             Legal Where it Occurred .................................................................. 15

       B.    There is No General Prohibition of Aiding and Abetting Under Federal
             Law ............................................................................................... 17

       C.    There is No General Prohibition of Aiding and Abetting Under State Law ........ 18

       D.    No Sufficient Evidence Supports Subject Matter Jurisdiction Over the UCL
             Claim ............................................................................................. 18

       E.    There Is No Claim for Aiding and Abetting a CLRA Violation ...................... 20

VIII.  PLAINTIFFS' CLRA COUNT SHOULD BE DISMISSED FOR THE FAILURE
       TO ALLEGE ANY TRANSACTION INVOLVING A "GOOD" OR "SERVICE" ...... 21

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**
(continued)

Page

IX.   PLAINTIFFS' CLRA COUNT SHOULD BE DISMISSED FOR THE FAILURE
      TO FILE THE AFFIDAVITS REQUIRED BY CIVIL CODE § 1780(D) .................... 23

X.    PLAINTIFFS HAVE NOT ALLEGED STANDING TO SUE UNDER THE UCL
      OR FOR DAMAGES UNDER THE CLRA ................................................................. 24

XI.   CONCLUSION ................................................................................................................ 25

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agrocomplect, AD v. Republic of Iraq,*
524 F. Supp. 2d 16 (D.D.C. 2007) .................................................................... 3

*America Online, Inc. v. St. Paul Mercury Ins. Co.,*
207 F. Supp. 2d 459 (E.D. Va. 2002) .............................................................. 22

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................... 1, 5

*Balistreri v. Pacifica Police Dep't.,*
901 F.2d 696 (9th Cir. 1990) ............................................................................ 4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................... 1, 5

Bennett v. Spear,
520 U.S. 154 (1997) .......................................................................................... 5

*Berry v. American Exp. Publishing, Inc.,*
147 Cal. App. 4th 224, 54 Cal. Rptr. 3d 91 (Cal. Ct. App. 2007) ............... 22

*Branch v. Tunnell,*
14 F.3d 449 (9th Cir. 2002) .............................................................................. 6

*Casey v. U.S. Bank Nat'l Assoc.,*
127 Cal. App. 4th 1138 (Cal. Ct. App. 2005) ........................................... 19, 20

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) ........................... 17

*Churchill Village, L.L.C. v. General Electric Co.,*
169 F. Supp. 2d 1119 (N.D. Cal. 2000) ......................................................... 16

*Clothesrigger, Inc. v. GTE Corp.,*
191 Cal. App. 3d 605, 236 Cal. Rptr. 605 (1987) ........................................ 16

*Colwell v. Dep't of Health & Human Servs.,*
558 F.3d 1112 (9th Cir. 2009) .......................................................................... 4

*Diamond Multimedia Systems, Inc. v. Super. Ct.,*
19 Cal. 4th 1036, 80 Cal. Rptr. 2d 828 (1999) ............................................. 16

*East Tex. Motor Freight Sys. v. Rodriguez,*
431 U.S. 395 (1977) .................................................................................... 13, 14

*Ecological Rights Found. v. Pacific Lumber Co.,*
230 F.3d 1141 (9th Cir. 2000) .......................................................................... 5

*Emery v. Visa Internat. Service Ass'n*
(2002) 95 Cal.App.4th 952, 116 Cal.Rptr.2d 25, 33 .................................... 19

*Epstein v. Washington Energy Co.,*
83 F.3d 1136 (9th Cir. 1996) ............................................................................ 5

*Estate of McDill,*
14 Cal.3d 831, 122 Cal.Rptr. 754, 758 (1975) ............................................. 18

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

Page

*Fairbanks v. Superior Court,*
46 Cal. 4th 56, 205 P. 3d 201 (2009)..................................................... 22

*Ferrington v. McAfee,*
Case No. 10-CV-01455 LHK, 2010 U.S. Dist. LEXIS 106600,
2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)..........................................21, 22

*Fiol v. Doellstedt,*
50 Cal. App. 4th 1318 (1996).............................................................. 19

*Galbraith v. County of Santa Clara,*
307 F.3d 1119 (9th Cir. 2002)............................................................... 6

*Glanton v. Advance PCS, Inc.,*
465 F.3d 1123 (9th Cir. 2006)............................................................. 14

*Hall v. Time Inc.*
(2008)158 Cal.App.4th 847, 70 Cal.Rptr.3d 466.................................. 24

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ...................................... 24

*In re First Alliance Mortg. Co.,*
471 F.3d 977 (9th Cir. 2006).............................................................. 19

*In re iPhone Application Litig.,*
2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011) .................. 23

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.,*
758 F. Supp. 2d 1077 (S.D. Cal. 2010).................................................. 24

*In re Stac Electronics Securities Litig.,*
89 F.3d 1399 (9th Cir. 1996)................................................................. 6

*In Re: Easysaver Rewards Litigation,*
737 F. Supp. 2d 1159 (S.D. Cal. 2010)................................................. 18

*Kingman Reef Atoll Invs., L.L.C. v. United States,*
541 F.3d 1189 (9th Cir. 2008)............................................................... 4

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005)............................................................... 6

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal.4th 1134 (1999)...................................................................... 14

*Kwikset Corp. v. Superior Court (Benson),*
51 Cal.4th 310 (2011)........................................................................ 12

*Lomita Land & Water Co. v. Robinson,*
154 Cal. 36 (Cal. 1908)..................................................................... 19

*McNutt v. General Motors Acceptance Corp.,*
298 U.S. 178, 80 L. Ed. 1135, 56 S. Ct. 780 (1936) .........................4, 13

*Meyer v. Sprint Spectrum L.P.,*
45 Cal.4th 634 (2009)........................................................................ 12

*Migliaccio v. Midland Nat'l Life Ins. Co.,*
No. CV 06-1007 CASMANX, 2007 WL 316873 (C.D. Cal. 2007) ........... 5

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

### TABLE OF AUTHORITIES
#### (continued)

Page

*N.E. Fla. Chap. of Assoc. Gen. Contractors of Am. v. Jacksonville,*
   508 U.S. 656 (1993) ............................................................................................. 3

*Nordberg v. Trilegiant Corp.,*
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................................ 16

*Norwest Mortgage, Inc. v. Super. Ct.,*
   72 Cal. App. 4th 214, 85 Cal. Rptr. 2d 18 (1999) ........................................... 16

Ocean Advocates v. United States Army Corps. of Eng'rs,
   402 F.3d 846 (9th Cir. 2005) ............................................................................... 5

*Papasan v. Allain,*
   478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ................................... 5

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ............................................................................... 6

*People v. One 1953 Ford Victoria,*
   48 Cal. 2d 595, 598-599, 311 P.2d 480 (1957) ............................................... 16

*People v. Toomey,*
   157 Cal.App.3d 1 (1984) ................................................................................... 18

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797, 105 S.Ct. 2965, 86 L. Ed. 2d 628 (1985) ................................. 16

*Plascencia v. Lending 1st Mortg.,*
   583 F. Supp. 2d 1090 (N.D. Cal. 2008) ............................................................ 18

*Pritikin v. Dep't of Energy,*
   254 F.3d 791 (9th Cir. 2001) ....................................................................3, 14, 20

*Raines v. Byrd,*
   521 U.S. 811 (1997) ..................................................................................... 3, 15

*Roberts v. Corrothers,*
   812 F.2d 1173 (9th Cir. 1987) ............................................................................ 4

*Saunders v. Superior Court,*
   27 Cal. App. 4th 832 (1994) ............................................................................. 19

*Simon v. E. Ky. Welfare Rights Org.,*
   426 U.S. 26 (1976) ............................................................................................... 4

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) ............................................................................... 5

*Thompson v. Illinois Dept. of Prof. Reg.,*
   300 F.3d 750 (7th Cir. 2000) ............................................................................... 7

*Thornhill Publishing Co. v. General Telephone & Elec.,*
   594 F.2d 730 (9th Cir. 1979) ............................................................................... 4

*Toy v. TriWire Engineering Solutions, Inc.,*
   No. C 10-1929 SI, 2010 U.S. Dist. LEXIS 90443 (N.D. Cal. Sept. 1, 2010) ......... 19

*Trentacosta v. Frontier Pac. Aircraft Indus.,*
   813 F.2d 1553 (9th Cir. 1987) ............................................................................ 4

# TABLE OF AUTHORITIES
### (continued)

**Page**

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,*
 355 F.3d 370 (5th Cir. 2004) ............................................................................ 7

*Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.,*
 114 Cal. App. 4th 548, 7 Cal. Rptr. 3d 844 (2003) ........................................ 22

*Wershba v. Apple Computer, Inc.,*
 91 Cal. App. 4th 224, 110 Cal. Rptr. 2d 145 (2001) ...................................... 16

*Wofford v. Apple,*
 Case No. 11-CV-0034 AJB N, 2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 9, 2011) ....... 23

**Statutes**

Business & Professions Code § 17204 ....................................................... 12, 24

Business & Professions Code § 17602 .............................................. 1, 2, 18, 19

California Commercial Code§ 9102 ................................................................. 22

Civil Code § 1761 ........................................................................................... 21

Civil Code § 1761(e) .................................................................................. 6, 21

Civil Code § 1770 .............................................................................. 20, 21, 23

Civil Code § 1780 ................................................................................ 1, 21, 23

Civil Code § 1781 ........................................................................................... 21

Penal Code § 31 .............................................................................................. 18

**Other Authorities**

15 U.S.C. § 8401 ...................................................................................... 1, 13

15 U.S.C. § 8402 ............................................................................................. 2

15 U.S.C. § 8403 ........................................................................................... 17

15 U.S.C. § 8404 ........................................................................................... 13

15 U.S.C. § 8405 ..................................................................................... 13, 18

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................. 4, 5

Federal Rule of Civil Procedure 12(b)(6) ............................................. 4, 5, 6

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## SUMMARY OF ARGUMENT

When leveling class action allegations as serious as stealing money from customers (FAC ¶1), the obligations imposed by Rule 11 and the Supreme Court in *Twombly/Iqbal* would seem to require substantial diligence in a plaintiff's pre-suit investigation. At a minimum, plaintiffs must be obliged to correctly identify the party responsible for the transactions which they allege violate the law. Disregarding those obligations, plaintiffs named Trend Micro Inc. as a defendant instead of the party with whom they actually transacted business over the Internet for the purchase and renewal of antivirus software licenses – non-party Digital River, Inc.

Plaintiffs named the wrong defendant to sidestep the fact that California's Unfair Competition Law (UCL) and Consumers Legal Remedies Act (CLRA) do not apply to extraterritorial transactions. But none of the plaintiffs resides in California. Digital River is a Delaware corporation with its principal place of business in Minnesota. And none of the acts alleged to violate the law are fairly traceable to Trend Micro. Therefore, plaintiffs' lack standing and this Court lacks subject matter jurisdiction.

Additionally, neither Trend Micro nor Digital River processed transactions with Plaintiffs Leanna Nekoranec or Lyle Hals. Indeed, Mr. Hals is not even a member of the defined putative class, and there is no independent basis for federal subject matter jurisdiction over his claim.

Numerous other defects pervade the complaint as well which require dismissal. For example, with respect to the CLRA, the Act does not apply to transactions relating to software because it is not a "good" or "service" as those terms are defined in the Act. Plaintiffs failed to file the affidavit required by Civil Code Section 1780 to commence the action, and cannot file a truthful affidavit now. There is no liability for aiding and abetting a violation of the CLRA, much less for aiding and abetting an extraterritorial transaction to which California law does not apply. Nor is there aiding and abetting liability for a violation of the Restore Online Shoppers' Confident Act ("ROSCA") 15 U.S.C. § 8401, et seq., or *Business and Professions* Code Section 17602. And with respect to the UCL, plaintiffs have failed to adequately allege their standing to sue.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   Plaintiffs cannot cure these defects in jurisdiction, and otherwise, and the complaint
2   should be dismissed with prejudice.

3   ## II.

4   ## FACTUAL BACKGROUND

5   Plaintiffs admit they are all residents of other states: Gentges (Missouri); Kersting
6   (Wisconsin); John and Leanna Nekoranec (Arizona); Hals (New Jersey). (FAC at ¶¶17-21.)
7   Nevertheless, they seek to a allege a putative class action for violations of California's UCL and
8   CLRA based upon their transactions for the purchase of Trend Micro computer security and anti-
9   virus software. (FAC at ¶2.) They allege that the trendmicro.com website where the software is
10  advertised and sold does not adequately disclose that the software license will automatically
11  renew at the expiration of the initial term, or thereafter. (FAC at ¶5.) They allege that the failures
12  to disclose and the charging of the credit cards they provided as part of the initial sales of
13  software licenses violate 15 U.S.C. §8402 and California Business and Professions Code Section
14  17602, as well as the UCL and CLRA. (FAC at ¶7.) For these acts, they bring claims for
15  violations of the UCL and CLRA. (FAC ¶¶114-129, and ¶¶130-140.)

16  However, plaintiffs admit that "Nothing on the Trend Micro website at this stage of the
17  purchase process [at and prior to the time the customer clicks the "Buy Now" button] discloses
18  that the subscription will automatically renew. (FAC at ¶30.) And by clicking on the "Buy Now"
19  button, the customer "may be taken to other web pages, which offer additional Trend Micro
20  products for sale." (FAC at ¶31.) According to plaintiffs, clicking on the "Buy Now" button
21  "Ultimately … takes the customer to 'Step 1' of the purchase process, where the website
22  summarizes the products that the consumer has selected to purchase." (FAC at ¶32.) As will be
23  shown below, "Step 1" of the purchase process and all of the steps that follow it are the work of
24  Digital River, not Trend Micro. (FAC at ¶34, screenshot at 6:1-16.) So too are Steps 2 and 3,
25  relating to the obtaining of billing information and completing the transaction. (FAC at ¶¶37-39,
26  screenshot at 7:4-20; Declaration of Melissa Hoen ("Hoen Decl.") at 4, 14-17, Ex. D p.6, Ex. D
27  p.8.) It is the purchase process – i.e. the process handled by Digital River and not Trend Micro –
28  that plaintiffs allege violated the law. (FAC at ¶¶ 43-44.)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs offer a series of "Alternative Factual Allegations," virtually all of which are alleged on information and belief, to conjure a theory that Trend Micro and Digital River "co-operate" the trendmicro.com online store. (FAC at ¶¶51-70.) However, the provisions of the Trend Micro Digital River Agreement – which are properly considered by the court because they are referred to expressly in the FAC (at ¶¶ 51 and 56) – demonstrate that plaintiffs' factual allegations are false. Fundamentally, and contrary to plaintiffs' allegations (FAC ¶53), the contract alleged in the FAC demonstrates that Digital River, not Trend Micro, owns the online store website through which the transactions are conducted. (Hoen Decl. ¶2; Ex. "A" at 1, 3 (Section II.A.2.).) And Digital River, not Trend Micro, controls the online store and the entire purchase process alleged to have violated the law in plaintiffs' transactions. *See infra* Part IV.B.

## III.

## THE COURT LACKS SUBJECT MATTER JURISDICTION, AND PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

"To demonstrate standing, … there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly … traceable to the challenged action of the defendant, and not … the result [of] the independent action of some third party not before the court; and [] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Pritikin v. Dep't of Energy*, 254 F.3d 791, 796-97 (9th Cir. 2001) (internal quotations and citations omitted) (alterations in original). Where, as here, plaintiffs sue the wrong defendant, they have no standing. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("To meet the standing requirements of Article III, a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (internal quotation, citation, and emphasis omitted); *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 44 (D.D.C. 2007) (citing *Raines v. Byrd* for proposition that suing the wrong party warrants dismissal for lack of Article III standing); see also *N.E. Fla. Chap. of Assoc. Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 663 (1993) (plaintiff must demonstrate alleged injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"); *Simon v. E. Ky.*

60553909.10
- 3 -
NOTICE AND MOTION TO DISMISS

1  *Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976) (same).

2        "[A] motion to dismiss for lack of subject-matter jurisdiction may either attack the

3  allegations of the complaint or may be made as a `speaking motion' attacking the existence of

4  subject-matter jurisdiction in fact." *Thornhill Publishing Co. v. General Telephone & Elec.*, 594

5  F.2d 730, 733 (9th Cir. 1979) (citations omitted). Indeed, if the party moving for dismissal under

6  Rule 12(b)(1) "denies or controverts the pleader's allegations of jurisdiction, then he is deemed to

7  be challenging the actual existence of subject matter jurisdiction, and the allegations of the

8  complaint are not controlling." *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1559

9  (9th Cir. 1987) (citation omitted). At that point, "the nonmoving party [must] present evidence

10 outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction."

11 *Id.* And the court may consider the extrinsic evidence to resolve factual disputes. *Kingman Reef*

12 *Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). "In such circumstances,

13 no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed

14 material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

15 claims." *Id.* (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

16       As the party asserting jurisdiction, plaintiff has the burden of proving that jurisdiction is

17 proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 80 L. Ed. 1135, 56 S. Ct. 780

18 (1936). After a defendant moves to dismiss a case under Rule 12(b)(1), "[i]t then becomes

19 necessary for the party opposing the motion to present affidavits or any other evidence necessary

20 to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."

21 *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (internal

22 quotation marks omitted) (citing *St. Clair*, 880 F.2d at 201).

23       In addition to the absence of subject matter jurisdiction, the action should be dismissed

24 because plaintiffs have failed to state a claim upon which relief can be granted. Fed. R. Civ. P.

25 12(b)(6). A Rule 12(b)(6) dismissal is proper where there is either a lack of a cognizable legal

26 theory or the absence of sufficient facts alleged under a cognizable legal theory. *Fed. R. Civ. P.*

27 12(b)(6); *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). However, the

28 court need not accept as true allegations that contradict matters subject to judicial notice, or

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60553909.10                      - 4 -                      NOTICE AND MOTION TO DISMISS

1     accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

2     unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001);

3     *see also Migliaccio v. Midland Nat'l Life Ins. Co.*, No. CV 06-1007 CASMANX, 2007 WL

4     316873, at *2 (C.D. Cal. 2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must

5     plead "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

6     U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.

7     662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*). In doing so, a plaintiff must

8     provide more than just speculative allegations and must allege "more than labels and conclusions,

9     and a formulaic recitation of the elements of a cause of action will not do." *Id.* Courts do not

10    accept conclusory allegations of law as true. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct.

11    2932, 92 L. Ed. 2d 209 (1986); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.

12    1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a

13    motion to dismiss for failure to state a claim.").

14                                              **IV.**

15    **PLAINTIFFS' ALLEGED INJURY IS NOT FAIRLY TRACEABLE TREND MICRO**

16            Plaintiffs cannot prove the threshold causation requirement to establish their standing

17    because none of their claims is fairly traceable to any action of Trend Micro. An injury is only

18    "fairly traceable" to a defendant's conduct if "the alleged injury can be traced to the defendant's

19    challenged conduct rather than to that of some other actor not before the court." *Ocean Advocates*

20    *v. United States Army Corps. of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (quoting *Ecological*

21    *Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000)); *see also Bennett v.*

22    *Spear*, 520 U.S. 154, 168-69 (1997) ("it does not suffice if the injury complained of is the result

23    [of] the independent action of some third party not before the court") (citations omitted). "The

24    causal connection put forward for standing purposes cannot be too speculative, or rely on

25    conjecture about the behavior of other parties...." *Ocean Advocates*, 402 F.3d at 860.

26            Whether considered as a motion to dismiss for lack of subject matter jurisdiction based

27    upon the evidence under Rule 12(b)(1), or as a motion to dismiss for a failure to state a claim

28    based upon the complaint under Rule 12(b)(6), both demonstrate plaintiffs have no standing to

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

sue, and that the court has no subject matter jurisdiction.

**A.**     <u>**The Complaint Shows Trend Micro Was Not Involved In Plaintiffs' Transactions**</u>

On a Rule 12(b)(6) motion, the Court need not confine itself to the narrative allegations of the complaint. It may also consider documents incorporated into the complaint, and referred to in the complaint, without turning the motion into one for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 2002) (overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). Indeed, the Court may even consider documents that are deliberately omitted from the complaint on which the complaint relies. S*ee also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998). Here, the FAC and the other matters properly considered based upon the complaint show that it was Digital River, not Trend Micro, that engaged in transactions with plaintiffs, and that controlled the website and purchase process plaintiffs claim to be illegal.

**1.**     **Plaintiffs' Screenshots Show Digital River Controlled The Transactions**

The screenshots pasted into the complaint show that it was Digital River, Inc. and not Trend Micro who engaged in transactions[1] with plaintiffs. These web pages are the online interface from which all of plaintiffs' claims derive.

At Page 6 of the FAC (after ¶34) plaintiffs interlineate a screenshot of "Step 1" of the order process that they allege is illegal and deceives a reasonable consumer. (FAC at ¶¶ 31-36, 43-44.) The bottom of the "Step 1" screen reads, "**Digital River Inc.** is the authorized reseller and merchant of the products and services offered within this store." (FAC at 6:16 (emphasis added).) Had plaintiffs not cut off the bottom portion of the second screenshot, the complaint would also allege that "Step 2" in that process – where billing information is obtained from the customer – likewise states "Digital River Inc. is the authorized reseller and merchant of the products and services offered within this store." (FAC at 6:23-7:23, ¶¶ 37-41; Hoen Decl. ¶¶4, Ex. D at 6.) Regardless, the part of the webpage cut off by plaintiffs is properly considered on a Rule 12(b)(6) motion. *In re Stac Electronics Securities Litig*, 89 F.3d 1399, 1405, n. 4 (9th Cir. 1996). And

---

[1] Civil Code Section 1761(e) of the CLRA defines "transaction" to mean "an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

although not pasted into the complaint as a separate screen shot, the "Step 3" page – the "Order Complete" confirmation page – is referred to in both of the preceding screen shots and by reference in paragraph 42. Thus, its contents too are properly considered. Like the Steps before it, the "Step 3 – Order Complete" page also reads "Digital River Inc. is the authorized reseller and merchant of the products and services offered within this store." (Hoen Decl. 4, Ex. "D" p.8.) It also states "The charge(s) will appear on your credit card as "DRI*Trend Micro".[2] *Id.*

These web pages are fatal to plaintiffs' claims. "[W]hen a written instrument contradicts allegations in a complaint to which it is attached, the *exhibit trumps the allegations.*" *Thompson v. Illinois Dept. of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2000) (original emphasis; internal quotes omitted); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

### 2.   The Digital River – Trend Micro Agreement Confirms Digital River Controlled The Online Store And Plaintiffs' Transactions

Plaintiff alleges "Trend Micro has contracted with third party Digital River Inc. … to assist with the sale of Trend Micro's computer security products through Trend Micro's website." (FAC ¶51.) The express language of the contract on which plaintiffs rely demonstrates the complaint grossly understates Digital River's role, and falsely alleges numerous other matters. Indeed, the contract alone demonstrates plaintiffs have no standing.

The purchase and resale agreement governing the operation of the online store that sells Trend Micro software licenses in the United States is between Digital River, Inc. (and affiliated Digital river entities) and Defendant Trend Micro Incorporated's corporate parent, Trend Micro Incorporated, a Japanese corporation which has its principal place of business located in Shibuya-ku Tokyo, Japan (Hoen Decl. ¶2, Ex. "A" and "B".) Under the Digital River-Trend Micro Agreement, Digital River purchases software licenses wholesale from Trend Micro for Digital River to resell through the online store it operates. (*Id.* at ¶2; Ex. "A" at Section I.A., II.A.) In fact, Digital River is expressly the "merchant of record through one or more *Stores* created,

---

[2] And contrary to the allegation that of a failure to conspicuously disclose the "mechanism for cancelling the Trend Micro subscription," (FAC ¶49) the Step 3 page conspicuously reads under the bolded and underlined heading "**Auto-Renew Information:**" "To learn more about Auto-Renew or to cancel automatic renewal go to the Auto Renew FAQ Page." (*Id.,* emphasis in original.)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

owned, hosted and maintained by DR in accordance with the terms of this Agreement." (*Id.*, p.1.)

Digital River, and not Trend Micro, sets the sales price and collects the money, and pays the sales or use taxes, for sales of software licenses sold by Digital River through its online store accessible via the trendmicro.com URL. (*Id.* at 1 (Section I.A. and II.F.2).) Although a trendmicro.com URL is used to avoid customer confusion, the web pages involved in operating the store are hosted by Digital River's servers. (Hoen Decl. ¶6; Decl. of Mitch Drew at ¶4.) For U.S. sales, those servers are located in Minnesota. (Hoen Decl. ¶22.)

Contrary to Paragraph 53 of the FAC, DR "retain[s] ownership of the *Stores*" under the Agreement. (*Id.* at ¶¶2, 8; Ex. "A" at 3 (Section II.A.2.) And contrary to Paragraph 54 of the FAC, "DR shall have ***full control*** over the privacy policy, ***terms and conditions of sale, and text of pages which are utilized in connection with the Cart***." (*Id.* at ¶2; Ex. "A" at 3 (Section II.A.2.) (emphasis added); Decl. of Mitch Drew ¶4; Decl. of Wilson Lau ¶2.) The "*Cart*" is defined as "Those portions of the *Store* forming the purchase process for *Products*, including without limitation the 'shopping cart' identifying the *Products* to be purchased, the *transaction*, and the confirmation of the *Transaction*…." (Hoen Decl. ¶2; Ex. "A" at 10.) And the "*Store*" is defined, in relevant part, as "The DR owned and constructed World Wide Web site from which Company's *Products* may be purchased by *End Users* from DR as the merchant of record." (*Id.*)

DR also controls the policies applicable to transactions: "DR will establish, maintain, and enforce a privacy policy or policies for the *Stores* that advises *End Users* that the *Stores* are owned and operated by DR, [and] that all *Transactions* are subject to DR's privacy policy…." (Hoen Decl. ¶¶2, 8-9; Ex. "A" at 4 (Section II.A.6.).) DR has the obligation to ensure compliance with privacy laws: "DR will use commercially reasonable efforts to comply with privacy laws applicable to its activities in connection with this Agreement." (Hoen Decl. ¶2, ; Ex. "A" at 4, Section II.A.7.) And DR has the discretion to make returns and refunds for customers: "DR's policy is to provide *End* users with a thirty (30) day right to return Products for a refund of the purchase price paid by the *End User*. Returns and refunds are in the discretion of DR, provided that such discretion is consistent with applicable local laws. This policy is subject to modification from time to time in the discretion of DR." (Hoen Decl. ¶¶2, ; Ex. "A" at 5 (Section II.A.12.).)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Thus, the Digital River-Trend Micro Agreement that plaintiff relies upon demonstrates that Digital River owns the online store, and controls all the terms of sale, the price, and the text of all of the pages utilized in connection with the shopping cart, checkout, and post-transaction confirmation pages. These contract provisions trump plaintiffs' narrative and conclusory allegations, and demonstrate none of the acts alleged is fairly traceable to Trend Micro.

**B.**     <u>Other Evidence Confirms Trend Micro Was Not Involved In Plaintiffs' Transactions</u>

In addition to the web pages and contract incorporated and referred to in the Complaint, the Declarations of Trend Micro's and Digital River's representatives, and the Exhibits attached to those declarations, demonstrate beyond doubt that plaintiffs have no standing.

**1.**     **The Web Pages At Issue Were Developed by Digital River**

In addition to the language included on the screenshots that plaintiffs themselves incorporated into the FAC, the evidence demonstrates that Digital River, not Trend Micro, has controlled the development of the online store pages used by Digital River to conduct transactions through links from the trendmicro.com URL. (Hoen Decl. ¶¶11-17.) It was Digital River, not Trend Micro, that has controlled the development of the portions of the online store pages that advertise and make disclosures concerning the automatic renewal feature of the Trend Micro software licenses sold by Digital River. (*Id.* at Decl. ¶12.) It was Digital River, not Trend Micro, that has controlled the development of the web pages for the "Steps" in the online purchase process, including the portions of the Cart involving the automatic renewal feature and that are used to make process transactions on the trendmicro.com URL. (*Id.* at ¶¶13-17; Decl. of Mitch Drew ¶2-3.)

**2.**     **Initial and Renewal Payments Have Been Processed by Digital River**

In addition to the advertisements of the auto renewal offer that are claimed to be unlawful, Digital River processed and received the payments that are alleged to have been illegally obtained from plaintiffs. (Hoen Decl. at ¶¶16, 20-21.) The payment card information collected in Step 2 of the transaction process has been used by Digital River to process payments for its resale of Trend Micro software through Digital River's own payment processors pursuant to Digital River's merchant accounts. (*Id.* at ¶15.) The payment card information has not been transferred to Trend

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    Micro. (*Id.*; Lau Decl. ¶6) Thus, only Digital River can process payments for renewals of

2    software licenses bought through trendmicro.com. (Hoen Decl. at ¶¶15-16, 20-21; Lau Decl. ¶6)

3    (In part for these reasons, and because Digital River authorizes refunds, Trend Micro refers

4    questions about billing and refunds for online purchases to Digital River's customer service. (*Id.*

5    at ¶15.)) Thus, during the period of its Agreement with Digital River, Trend Micro has not had

6    any role, and did not participate, in charging payment cards or processing payments made by

7    customers through the initial purchase process or for renewals. (*Id.* at ¶¶20-21; Drew Decl. ¶4;

8    Lau Decl ¶7-8.)

9    **3.    Order Confirmations and Renewal Notifications Are Sent By Digital River**

10   In addition to controlling the initial and renewal purchase process, it was also Digital

11   River, not Trend Micro, who has sent customers purchase confirmations and renewal notices

12   pursuant to the auto-renewal plan. (Hoen Decl. ¶¶18-19; Drew Decl. ¶5; Lau Decl. ¶¶4-5.) Digital

13   River, not Trend Micro, controlled the development of those e-mails. (*Id.*)

14   **4.    Digital River Processed The Subject Transactions**

15   Trend Micro was not involved in processing any of the transactions at issue in the

16   complaint. (Hoen Decl. ¶20-21; Lau Decl. ¶2, 8.) Except for the transactions of Plaintiffs Leanna

17   Nekoranec and Lyle Hals, Digital River processed all of them. (Hoen Decl. at ¶¶6, 20-21, 47-50.)

18   **a.    Plaintiff Sharon Gentges' Transactions with Digital River**

19   Sharon Gentges purchased a Trend Micro Internet Security software license from Digital

20   River on September 28, 2009. Trend Micro was not involved in that transaction. (Hoen Decl. ¶25,

21   Ex. E at 1.) Digital River sent her renewal reminders on September 14 and 29, 2010 which

22   provided information and a link through which she could disable the automatic renewal feature.

23   (*Id.* at ¶¶26, 28, Ex. E at 1-2, 4.) Before the renewal could be processed, on September 24, 2010

24   Digital River notified Ms. Gentges that her credit card could not be processed for the renewal and

25   as a result, that her subscription had not been renewed; and Digital River provided a link through

26   which to renew the license. (*Id.* at ¶27, Ex. E at 3.)

27   On October 3, 2010, Ms. Gentges purchased a 1-year Renewal of her software license

28   from Digital River; Trend Micro was not involved in that transaction. (*Id.* at ¶29, Ex. E at 5; FAC

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60553909.10                                      - 10 -                    NOTICE AND MOTION TO DISMISS

at ¶74.) Digital River sent her an e-mail confirming her purchase the same day which stated, among other things, "Thank you for visiting the Trend Micro Online Store powered by Digital River…. If you paid by credit card, please look for DRI*Trend Micro on your credit card billing statement." (*Id.* at ¶30, Ex. E at 6-8.) That e-mail also provided "Auto Renew Information" that stated "You are registered for automatic renewal of Trend Micro Titanium Internet Security," provided information about Auto-Renew, and provided a link to cancel automatic renewal. The e-mail also explained that "For billing questions or additional assistance with your order, please contact Digital River at <u>Customer Service</u>." The underlined reference to "Customer Service" in the notification e-mail contains a hyperlink to Digital River's customer service contact information. (*Id.* at ¶30, Ex. E at 7.)

On September 4 and 19, 2011, Digital River again sent automatic renewal reminders to Ms. Gentges. (*Id.* at ¶¶31-32, Ex. E at 8-13.) And on October 4, 2011, Digital River automatically renewed Ms. Gentges' Trend Micro license, and sent her a confirming e-mail with the same information and link as before. Trend Micro was not involved. (*Id.* at ¶33, Ex. E at 14-16.)

**b.       Plaintiff Marion Kersting's Transactions with Digital River**

Marion Kersting purchased a Trend Micro software license from Digital River on October 9, 2009; Trend Micro was not involved in that transaction. (Hoen Decl. ¶35, Ex. F at 2.) On September 25, 2010, Digital River sent her a renewal reminder like that sent to Ms. Gentges. (*Id.* at ¶36, Ex. F at 2-5.) And on October 5, 2010, Digital River automatically renewed her software license, and sent an e-mail confirmation; Trend Micro was not involved in that either. (*Id.* at ¶37, Ex. F at 6-7, 10.) In addition to providing details of the automatic renewal, the confirmation e-mail read, "If you have questions about your order, please visit: www.findmyorder.com" – www.findmyorder.com is a customer service website operated by Digital River. Trend Micro is not involved in the operation of that website. (*Id.* at ¶37, Ex. F at 10.)

On September 11 and 26, 2011, Digital River sent automatic renewal reminders to Ms. Kersting that also provided information and a link through which the automatic renewal feature could be disabled. (*Id.* at ¶¶38-39, Ex. F at 7-9.) On October 6, 2011, Digital River automatically

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

renewed Ms. Kersting's software license, and sent a confirming e-mail, again directing questions to www.findmyorder.com. Trend Micro was not involved. (*Id*. at  ¶40, Ex. F at 11-12.)

### c.   Plaintiff John Nekoranec's Transactions with Digital River

John Nekoranec purchased Trend Micro software licenses from Digital River on April 20, 2010 and October 7, 2010, and Digital River sent him e-mails confirming his purchases and directing billing questions to a digitalriver.com website that in turn provided information about Digital River's Auto-Renewal Service and how to cancel it; Trend Micro was not involved in those transactions. (Hoen Decl. ¶¶42-43, Ex. G at 1-3, 5-7.) On September 13, 2011, Digital River sent an automatic renewal reminder that provided information and a link through which the automatic renewal feature could be disabled. (*Id*. at ¶45, Ex. G at 7.) On October 8, 2010, Digital River automatically renewed his license, and sent a confirming e-mail that provided a link to findmyorder.com; Trend Micro was not involved in that transaction. (*Id*. at ¶46, Ex. G at 9.)

### d.   Plaintiff Leanna Nekoranec Has No Standing To Sue Under The UCL or CLRA for a Lack of Causation

Although Digital River has records of a transaction with John Nekoranec, neither Digital River nor Trend Micro has any record of a transaction involving Plaintiff Leanna Nekoranec. (Hoen Decl. ¶47.) The FAC alleges that she is married to and has a joint credit card with John Nekoranec and that they, collectively, purchased computers and had their credit card charged. (FAC ¶¶ 22, 91-94.) However, there is no allegation that she participated in a transaction with Trend Micro (or Digital River) or that she was deceived or personally suffered a loss of money or property "as a result of" an unlawful act being perpetrated against her. It was John Nekoranec who purchased the Trend Micro software licenses from Digital River. *Supra* Part c.

Both the UCL and the CLRA have a causation requirement, but there is no allegation that Ms. Nekoranec suffered a loss of money or property (for a UCL claim) or damages (for a CLRA claim) "as a result" of unlawful conduct by Trend Micro. For the absence of any allegation of causation, plaintiff has no standing to sue for a violation of the UCL or the CLRA. See *Bus. & Prof. Code* §17204 and *Kwikset Corp. v. Superior Court (Benson)*, 51 Cal.4th 310, 326 (2011) (UCL); and *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 641 (2009) (CLRA).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

### e.    Plaintiff Lyle Hals' Transaction with Digital River

Trend Micro has no record of a transaction with Plaintiff Hals; Digital River does, but it is not for the transaction that is alleged in the FAC. (Hoen Decl. ¶48, Ex. H at 4; FAC ¶¶100-106.) According to Digital River's records, Lyle Hals purchased a Trend Micro software license from Digital River on September 13, 2009 that was renewed on September 9, 2010 and then again on September 10, 2011. (Hoen Decl. ¶49, Ex. H at 1, 4-6.) But On November 24, 2011, Mr. Hals requested that Digital River cancel his subscription, which it did, and confirmed his refund of $35.95 on November 26, 2011. (Hoen Decl. ¶50, Ex. H at 2-3, 7-8.)

To the extent the Complaint concerns that transaction, the claim is moot. To the extent it concerns some other transaction on or around the dates alleged in the FAC, there is no evidence of such a transaction ever occurring between Mr. Hals and Digital River or Trend Micro.

### V.

### THERE IS NO SUBJECT MATTER JURISDICTION OVER PLAINTIFF HALS' CLAIMS BECAUSE HE IS NOT A MEMBER OF THE DEFINED PUTATIVE CLASS

Unlike Plaintiffs Gentges, Kersting and the Nekoranecs, Mr. Hals is not alleged to have visited, much less purchased or activated anything through the Trend Micro online store. As a result, he is not a member of the defined putative class that is alleged in the FAC. And because the Court's subject matter jurisdiction is based solely upon the existence of a class under 28 U.S.C. §1332(d)(2) (FAC at 2:24-27), there is no subject matter jurisdiction over Hals' claims.[3]

As the party asserting jurisdiction, the plaintiff has the burden of proving that jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 80 L. Ed. 1135, 56 S. Ct. 780 (1936). And, in a class action, "a class representative must be part of the class." *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977). Paragraph 107 of the Amended Complaint defines a putative class comprising "all persons: a) who purchased a software membership product on the Trend Micro website, and b) who were charged for the automatic

---

[3] There is also no federal question jurisdiction under the only federal statute identified in the complaint since that statute does not include a private right of action. See `Restore Online Shoppers' Confidence Act' ("ROSCA"), 15 U.S.C. § 8401, et seq. at §8404 (Federal Trade Commission enforcement) and §8405 (State attorneys general enforcement).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    renewal of that software product by Trend Micro on or after November 15, 2007." (Emphasis in

2    original.) Because he is not alleged to meet the first requirement, Plaintiff Hals is not a member of

3    the defined putative class on the face of the complaint.

4          The FAC alleges that "Plaintiff Hals purchased a new personal computer" which

5    "included a 1-year Trend Micro subscription already installed on it." (FAC at ¶ 100.) It alleges

6    that "In November 2011, Trend Micro, without Hals's knowledge or consent, automatically

7    renewed Hals's Trend Micro subscription and charged Hals $39.95 for this renewal." (FAC at

8    ¶102.) These specific allegations contradict and control over the general allegation that "Plaintiffs

9    and the other Class members purchased a Trend Micro software subscription through the Trend

10   Micro website." (FAC at ¶¶ 115, 131). Neither in the allegations related specifically to Mr. Hals

11   (FAC at ¶¶ 100-106), nor anywhere else in the complaint, have plaintiffs alleged that he

12   "purchased a software membership product on the Trend Micro website." As such, he is not

13   alleged to be a member of the putative class, and resolution of his claim cannot provide answers

14   to questions alleged to be common among the others. (*Compare* FAC ¶¶ 100-106 *with* ¶ 112).

15         Plaintiffs base subject matter jurisdiction solely on 28 U.S.C. § 1332(d)(2). (FAC at ¶ 13.)

16   But because Mr. Hals is not a member of the putative class, there is no subject matter jurisdiction

17   over his California state law claims. And he could never serve as a class representative. *See e.g.*

18   *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) (named plaintiff must be a

19   member of the class he seeks to represent); *Glanton v. Advance PCS, Inc.*, 465 F.3d 1123, 1126

20   (9th Cir. 2006) ("A party can only serve as a class representative if he has a personal claim that is

21   representative of the claims of other class members").

22                                              **VI.**

23   **PLAINTIFFS HAVE NO STANDING TO SUE FOR A VIOLATION OF THE UCL FOR**

24                    **A LACK OF REDRESSABILITY**

25         Only restitutionary and injunctive relief are available under the UCL; damages are not

26   recoverable. *See e.g. Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (1999). And

27   as above, "[t]o demonstrate standing, ... it must be likely, as opposed to merely speculative, that

28   the [claimed] injury will be redressed by a favorable decision." *Pritikin*, 254 F.3d at 796-97

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

(internal quotations and citations omitted); *see also Raines v. Byrd*, 521 U.S. at 818 ("To meet the standing requirements of Article III, a plaintiff must allege personal injury … likely to be redressed by the requested relief."). Plaintiffs lack standing because they cannot show that restitution or injunctive relief would redress the claimed injury.

With respect to restitution, the money paid for the sale of Trend Micro software licenses in online transactions was and is paid by customers to Digital River, not Trend Micro.[4] (Hoen Decl. ¶2 at Ex. "A" p.1 ¶1.A.; ¶16.) And Digital River's payments are to TM Japan, not defendant. (*Id.* at Ex. "A" p.1 ¶1.A.) Because plaintiffs' money was not paid to Trend Micro, the money they claim to have lost cannot be returned by the defendant plaintiffs chose to name.

Injunctive relief is also futile and unavailable. As explained above, Trend Micro does not participate in the charging of credit cards for the initial or renewal sales of software licenses. And it contractually relinquished control of the online store's content. (See *supra* Parts IV.A.1-2, IV.B.1-2.) Because Trend Micro does not control the content of the online store and does not charge credit cards, there is no injunctive relief a court could issue that would redress the claimed injury suffered in the past, nor prevent an injury from occurring in the future.

## VII.

## PLAINTIFFS' ALTERNATE AIDING AND ABETTING THEORY DOES NOT CURE THE ABSENCE OF SUBJECT MATTER JURISDICTION

Unwilling to admit that the CLRA and UCL do not apply to their extraterritorial transactions, plaintiffs allege an alternate, aiding and abetting theory. However, the theory is inadequate to confer subject matter jurisdiction as a matter of law.

A.    **Because The UCL and CLRA Do Not Apply Extraterritorially, Trend Micro Cannot Be Held Liable for Aiding and Abetting Conduct that Is Legal Where it Occurred**

Courts ordinarily presume the California Legislature does not intend its statutes to have force or operation beyond the state's boundaries. *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal.

---

[4] As the Digital River-Trend Micro Agreement explains, Trend Micro is prepaid by Digital River and subsequently gets a Net Purchase Price that is calculated after payments previously made, chargebacks, discounts, and "Additional Costs and Fees and CTO Costs." (Hoen Decl. ¶2, Ex. A p.7-8, Part II.F.4-5.)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

App. 4th 214, 222, 85 Cal. Rptr. 2d 18 (1999); *People v. One 1953 Ford Victoria*, 48 Cal. 2d 595, 598-599, 311 P.2d 480 (1957). Accordingly, courts do not construe a statute as regulating transactions outside the state unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute. *Diamond Multimedia Systems, Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059-1060, 80 Cal. Rptr. 2d 828 (1999).

Beyond California's presumption against the extraterritorial application of its laws, a California court's adjudication of a nonresident's claim which lacks a nexus with the forum state raises significant due process problems. *Churchill Village, L.L.C. v. General Electric Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000). Even in the case of a putative class action, and although a forum state may have personal jurisdiction over the defendant, the forum still must have a significant contact or aggregation of contacts to the claims asserted to ensure that application of the forum law to each claim is not arbitrary or unfair. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-822, 105 S.Ct. 2965, 86 L. Ed. 2d 628 (1985). The existence of personal jurisdiction over the defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs. 472 U.S. at 821. Thus, California courts only permit the extraterritorial application of California laws when there is a significant nexus to California. *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613, 236 Cal. Rptr. 605 (1987), (headquarters in and fraudulent misrepresentations contained in literature prepared in California.); *see also Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242, 110 Cal. Rptr. 2d 145 (2001) (constitutional concerns were satisfied because defendant was a California corporation and the brochures at issue were prepared and distributed in California).

The UCL does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California. *Id.*; *Churchill Village*, 169 F. Supp. 2d at 1126 (N.D. Cal. 2000). UCL claims must have a nexus with California to avoid "significant due process problems." *Churchill Village*, 169 F. Supp. 2d at 1126-27 (quotations omitted).

Likewise, only Plaintiffs who are California residents have standing to bring a CLRA claim. *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal. 2006). As explained in *Norwest*, the application of California law would be unfair and violate due process when a

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

defendant's headquarters, principal place of business, the place where the out-of-state plaintiffs were injured, and the place the injury-producing conduct occurred were outside California. *Norwest*, 72 Cal. App. 4th at 227.

While Trend Micro has its American headquarters in California, it is not alleged to have aided and abetted a California-based party in violating the UCL and CLRA. The only party it is alleged to have aided and abetted is Digital River – a Delaware corporation with its principal place of business in Minnesota. (FAC at ¶¶51-71.) Because all the plaintiffs are residents of states other than California, Digital River cannot be held liable under the UCL or the CLRA for wholly extraterritorial transactions. And yet, plaintiffs theory would impose liability on Trend Micro for aiding and abetting Digital River in acts for which Digital River cannot be held liable under that same law. No authority permits such incongruous liability.

**B.    There is No General Prohibition of Aiding and Abetting Under Federal Law**

As above, ROSCA (15 U.S.C. §8403) is the only federal statute alleged to have been violated. It only outlaws charging or attempting to charge consumers' credit cards under certain circumstances. No other conduct is proscribed by the statute. And it does not itself provide for liability of aiders and abettors. Indeed it created no private right of action at all.

Plaintiffs have sought to bootstrap an alleged violation of ROSCA into a private right of action under the UCL and the CLRA.[5] However, they have nowhere alleged that Trend Micro aided and abetted Digital River in charging plaintiffs' credit cards or attempting to do so.

Moreover, "Congress has not enacted a general civil aiding and abetting statute." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994). And even "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abetters."[6] *Id.* at 175-77 & 181-85 (federal securities laws do not allow claims based upon aiding

---

[5] The fact that the statute does not create a private right of action will be addressed separately if necessary at the summary judgment stage.

[6] Here, Congress did not even create a private right of action. The only people who can sue for violations of ROSCA are the Federal Trade Commission and state attorneys general. And the grant of authority to the state attorneys general is a limited one, providing only for injunctive

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

and abetting because statute was silent and Congress "knew how to impose aiding and abetting liability when it chose to do so"); *In Re: Easysaver Rewards Litigation*, 737 F. Supp. 2d 1159 (S.D. Cal. 2010). There is no authority for the proposition that a party can be liable for aiding and abetting a violation of ROSCA. The plain language of the statute suggests the opposite is true.

## C.   There is No General Prohibition of Aiding and Abetting Under State Law

When the Legislature passed *Business and Professions Code* Section 17602, it prohibited the specific businesses "making an automatic renewal or continuous service offer to a consumer in this state" from doing various things. It did not prohibit aiding and abetting the making of the offer. In the absence of such language, it cannot be presumed a different meaning was intended.

"It is assumed that the Legislature has in mind existing laws when it passes a statute. The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended." *Estate of McDill*, 14 Cal.3d 831, 837-838, 122 Cal.Rptr. 754, 758 (1975) (citations omitted). Among the laws of which the California Legislature was necessarily aware when it enacted Section 17602 was *Penal Code* Section 31. That Section proscribes aiding and abetting any other violation of the *Penal Code* and establishes the requisite level of intent and conduct required to demonstrate a violation of law. But like federal law, California law does not have a general, civil, aiding and abetting statute.

## D.   No Sufficient Evidence Supports Subject Matter Jurisdiction Over the UCL Claim

Despite California's recognition of claims for aiding and abetting a UCL violation, such a claim does not create a causal connection between Trend Micro and Plaintiffs' transactions with Digital River that remedies the lack of subject matter jurisdiction over Plaintiffs' UCL claims.

The UCL "imposes liability only for a party's 'personal participation in the unlawful practices.'" *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (*quoting People v. Toomey*, 157 Cal.App.3d 1, 14 (1984)). "The concept of vicarious liability has no application to actions brought under the unfair business practices act." *People v. Toomey* (1984) 157 Cal.App.3d 1, 14. A defendant's liability must be based on his personal "participation relief. 15 U.S.C. §8405(a).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   in the unlawful practices" and "unbridled control" over the practices found to violate section

2   17200. *Id.* at 15; *Emery v. Visa Internat. Service Ass'n* (2002) 95 Cal.App.4th 952, 960, 116

3   Cal.Rptr.2d 25, 33. Here, Trend Micro's participation is not only bridled, it is absent.

4       Aiding and abetting the principal violator may be sufficient to give rise to a UCL claim

5   only if the common law definition of aiding and abetting is met. *Id.*. Under the common law, one

6   "aids and abets the commission of an intentional tort if the person…*knows* the other's conduct

7   constitutes a breach of duty and *gives substantial assistance* or encouragement to the other to so

8   act." *Id.* (*citing Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996) (*quoting Saunders v.*

9   *Superior Court*, 27 Cal. App. 4th 832, 846 (1994))). Nevertheless, aiding and abetting is not a

10  basis for a UCL claim based on a violation of ROSCA, or *Business and Professions Code* Section

11  17602, or the CLRA since those statutes themselves do not provide for aider/abettor liability. *See*

12  *Toy v. TriWire Engineering Solutions, Inc.*, No. C 10-1929 SI, 2010 U.S. Dist. LEXIS 90443, at

13  *8-*10 (N.D. Cal. Sept. 1, 2010) (concluding that the UCL does not impose "aiding and abetting

14  liability outside of either a tort context or where an underlying statute allows such liability").

15      With regard to the requisite level of knowledge, "California courts have long held that

16  liability for aiding and abetting depends on proof the defendant had *actual knowledge of the*

17  *specific primary wrong* the defendant substantially assisted." *Casey v. U.S. Bank Nat'l Assoc.*,

18  127 Cal. App. 4th 1138, 1145 (Cal. Ct. App. 2005) (emphasis added); *In re First Alliance Mortg.*

19  *Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (citing same). To prove aiding and abetting, a party must

20  show "intentional participation *with knowledge of the object to be attained.*" *Casey*, 127 Cal.

21  App. 4th at 1145. (quoting *Lomita Land & Water Co. v. Robinson*, 154 Cal. 36, 47 (Cal. 1908)

22  (emphasis in original)). Accordingly, for Trend Micro to be liable for aiding and abetting Digital

23  River's alleged UCL violation, Trend Micro would have to have had actual knowledge that

24  Digital River was violating the law *and* provided substantial assistance with the intent that the

25  wrongful acts occur. Proof of both is lacking, and there is no subject matter jurisdiction.

26      Plaintiffs' UCL claim is based on an alleged failure to clearly and conspicuously disclose

27  the automatic renewal program's terms prior to obtaining Plaintiffs' billing information, failing to

28  obtain consent before charging Plaintiffs for the automatic renewal, and failing to provide a

60553909.10                       - 19 -             NOTICE AND MOTION TO DISMISS

1   simple mechanism for stopping the automatic renewal charges. Complaint at ¶¶118-126. The

2   evidences demonstrates Trend Micro had no knowledge of these matters and did not substantially

3   participate in them.. Trend Micro would need to, but did not, have actual knowledge of the

4   inadequacy of the disclosures and substantially assist Digital River in disseminating the allegedly

5   inadequate disclosures. *Casey* 127 Cal. App. 4th at 1145. Rather, Trend Micro's involvement in

6   the development of the web pages containing the disclosures was *de minimis.* [Hoen Decl. ¶¶11-

7   17.] Similarly, with regard to the charges, Trend Micro would need to have actual knowledge of a

8   lack of consent and then provide substantial assistance to complete those charges. Trend Micro

9   did not participate in obtaining, or charging of payment cards. [Hoen Decl. ¶¶ 20-21.] Finally,

10  with regard to the provision of a mechanism for stopping the charges, Trend Micro would have

11  needed actual knowledge of a lack of a simple mechanism for stopping charges and would have

12  needed to provide substantial assistance to ensure that simple mechanisms were not put into

13  place. Trend Micro did not have the requisite substantial participation in the development or

14  sending of the pre-renewal notifications that contained instructions for cancelling the automatic

15  renewals. [Hoen Decl. ¶18-19].

16      Thus, plaintiffs cannot show Trend Micro aided and abetted Digital River, and cannot

17  show they have standing. Particularly in light of the strictures of the Digital River- Trend Micro

18  Agreement, there is no satisfactory evidence that Trend Micro provided the degree of substantial

19  assistance necessary to impose liability for aiding and abetting on any other ground either.

20  Consequently, plaintiffs' aiding and abetting theory does not cure the standing defect in their

21  UCL and CLRA claims due to Trend Micro's lack of involvement in the transactions at issue.

22  **E.      There Is No Claim for Aiding and Abetting a CLRA Violation**

23      In addition to the absence of a nexus supporting a subject matter jurisdiction over a claim

24  for aiding and abetting under *Pritikin,* 254 F.3d 796-97, there is no basis for a claim for aiding

25  and abetting a claim for a violation of the CLRA. No such claim exists.

26      No authority can be found holding a defendant liable under the CLRA for aiding and

27  abetting. And the statute itself contemplates that only one party could be held liable for a

28  violation. Civil Code Section 1770 makes certain conduct unlawful when "undertaken by any

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

person in a *transaction* intended to result or which results in the sale or lease of goods or services to any consumer." CLRA § 1770 (emphasis added). A "transaction" is defined under the statute as "an agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e). Unless the transaction is a multilateral one (rather than a bilateral one), there could only be one "person in a transaction" other than the consumer who might be liable. Indeed, the only references to "persons", plural in the CLRA concerns plaintiffs, not defendants. See e.g. Cal Civ. Code §§ 1770(a)(24), 1780(b)(2), (c), 1781.

VIII.

## PLAINTIFFS' CLRA COUNT SHOULD BE DISMISSED FOR THE FAILURE TO ALLEGE ANY TRANSACTION INVOLVING A "GOOD" OR "SERVICE"

Plaintiffs' claims for violations of the CLRA all concern the initial and renewal sales of various types of Trend Micro software (or more properly licenses to use the software). However, transactions involving the software like those pled here cannot be the subject of a CLRA violation because software is not a "good" or "service" within the meaning of the CLRA.

Civil Code Section 1770 only prohibits certain conduct in a transaction "intended to result or which results in the sale or lease of goods or services…." "Goods" and "services" are defined in Civil Code Section 1761(a-b) as follows:

> (a) "Goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.

> (b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.

Interpreting and applying these definitions, courts have uniformly held that transactions involving software are not covered by the CLRA. For example, *Ferrington v. McAfee*, Case No. 10-CV-01455 LHK, 2010 U.S. Dist. LEXIS 106600, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010), involved a claim against McAfee which, like Trend Micro, is a "provider of computer security

software whose products may be purchased and downloaded from the McAfee website." *Id.* at *1-2. The complaint also named Arpu, Inc., "a company that places online advertisements that enable consumers to purchase products 'with a single click, using credit card information already on file.'" *Id.* at *2. "Arpu partnered with McAfee to place ads on McAfee's website that would appear after a customer completed a purchase of a McAfee product. … If a customer chooses to subscribe to the product or service offered in the Arpu ad, McAfee transmits their billing information to Arpu for use in the purchase of the Arpu product…." *Id.* at *2. Plaintiffs purchased McAfee's anti-virus program from a McAfee website, clicked on a "Try It Now" ad provided by Arpu, that permitted the transfer of credit card information from McAfee to Arpu, and plaintiffs were charged for additional software. *Id.* at *2-3. On motion, the Court dismissed Ferrington's CLRA count. In addition to relying on the above statutes, the Court agreed that:

> [S]oftware, like insurance and credit, is an intangible chattel under California law and is therefore not encompassed in the CLRA's definition of a 'good.' *See Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61, 205 P. 3d 201 (2009) (holding that life insurance is not a tangible chattel and therefore not a good under the CLRA); *Berry v. American Exp. Publishing, Inc.*, 147 Cal. App. 4th 224, 229, 54 Cal. Rptr. 3d 91 (Cal. Ct. App. 2007) (holding that a credit card is not a good for purposes of the CLRA). … Section 9102(a) of the California Commercial Code, … provides definitions of terms that apply to secured transactions. Section 9102(a) defines 'general intangibles' specifically to include software, Cal. Comm. Code § 9102(a)(42), and expressly excludes computer programs from the definition of 'goods,' *id.* § 9102(44). The Court also note[d], in support of Defendant's position, that at least one California appellate court has held that a database stored on a computer is not 'physical' or 'tangible' in the 'ordinary and popular sense' of those words. *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556, 7 Cal. Rptr. 3d 844 (2003). In so holding, the court relied on and approved of a decision from the Eastern District of Virginia, which held that "computer data, software and systems are not 'tangible' property in the common sense understanding of the word" and distinguished the tangible medium in which such data and programs are stored from the intangible software and information itself. *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th at 557 (quoting *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 462 (E.D. Va. 2002).

*Ferrington*, 2010 U.S. Dist. LEXIS 106600 at *53-*54. Ultimately, the Court held that "The CLRA's express limitation of goods to 'tangible chattels' must be given meaning, and current California law suggests that these words exclude software from the Act's coverage. The Court therefore concludes that the software Plaintiffs purchased is not a good covered by the CLRA."[7]

---

[7] Although the Hosted Reseller Agreement refers to the sale of "*Products*" in various places, the definitions dispel any notion that the software sold to plaintiffs is a "good" or "service" within the

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   *Id.* at \*57. Relying upon *Ferrington*, the Courts in *Wofford v. Apple*, Case No. 11-CV-0034 AJB

2   N, 2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 9, 2011) and *In re iPhone Application Litig.*,

3   2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011), have reached the same result.

4        For the same reasons, plaintiffs' software purchases cannot support a CLRA claim.

5   IX.

6   ## PLAINTIFFS' CLRA COUNT SHOULD BE DISMISSED FOR THE FAILURE TO FILE

7   ## THE AFFIDAVITS REQUIRED BY CIVIL CODE § 1780(d)

8        A plaintiff commencing a CLRA action must contemporaneously file an affidavit stating

9   the action is brought in a proper place for the suit. Cal. Civ. Code §1780(d). The only places that

10  are proper for suit are where the other party to the "transaction" resides, has its principal place of

11  business, does business, or where the transaction or a substantial part of the transaction occurred.

12  *Id.* No plaintiff has filed the required affidavit. The CLRA count must therefore be dismissed.

13       In some circumstances, dismissal for the absence of the required affidavit may put form

14  over substance. Here it does not. None of the plaintiffs can truthfully state under penalty of

15  perjury that they engaged in a transaction with the sole defendant they have chosen to name,

16  Trend Micro. Under the circumstances presented, plaintiffs must be put to the task of stating

17  under penalty of perjury what they either know is false or have no reason to believe is true, or be

18  denied the right to pursue a CLRA cause of action.

19       California Civil Code Section 1780(d) requires that in any action brought under Section

20  1770 (which describes unlawful transactions under the CLRA) "concurrently with the filing of the

21  complaint, the plaintiff *shall file* an affidavit stating facts showing that the action has been

22  commenced in the county described in this section as a proper place for trial of the action." Civil

23  Code § 1780(d). Under this section, an action "may be commenced in the county in which the

24  person against whom it is brought resides, has his or her principal place of business, or is doing

25

26  meaning of the CLRA. "*Products*" is defined in the General Terms and Conditions as "A copy of
    the Company's [Trend Micro's] *Software* and/or *Non-Software Product, Documentation,* and

27  *EULA,* if any, packaged in computer readable form together for electronic delivery on
    www.digitalriver.com (or equivalent) and/or in tangible packaged form for delivery...." (Hoen

28  Decl. ¶___; Ex. "B" at 8.) "*Software*" is defined in turn as "The executable code for *Products* to
    an *End User* through a single order." *Id.*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    business, or in the county where the transaction or any substantial portion thereof occurred." *Id.*

2    No plaintiff has filed the required affidavit. The Code provides a remedy for such circumstances:

3    "If a plaintiff fails to file the affidavit required by this section, the court *shall* upon its own motion

4    or upon motion of any party, dismiss the action without prejudice." *Id.* (emphasis added).

5    Accordingly, plaintiffs' claim for a violation of the CLRA must be dismissed. *See In re Apple &*

6    *AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 1070, 1077 (N.D. Cal. 2011) (dismissing

7    CLRA claims without prejudice as to all plaintiffs "because they did not file the required

8    affidavits"); *see also In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV*

9    *Television Litig.*, 758 F. Supp. 2d 1077, 1094 (S.D. Cal. 2010) (dismissing CLRA claim in a

10   consolidated class action complaint as to all plaintiffs who did not file required affidavit).

## X.

## PLAINTIFFS HAVE NOT ALLEGED STANDING TO SUE UNDER THE UCL OR FOR DAMAGES UNDER THE CLRA

14          Plaintiffs' complaint does not adequately allege their standing to sue under either the UCL

15   or the CLRA. All plaintiffs allege is that "Trend Micro's misconduct has damaged numerous

16   consumers in the form of automatic renewal fees that were not adequately disclosed to the

17   consumers." Elsewhere they variably allege that "Despite the [plaintiffs'] efforts, they could not

18   find a way to contact Trend Micro to stop the automatic renewal charges." However, none of

19   them has alleged that, at the time of their initial transactions, they did not want their software

20   licenses to be automatically renewed, that the software and renewal was unsatisfactory, or the

21   software was worth less than what they paid. Without such allegations, plaintiffs do not have

22   standing to sue.

23          The Court in *Hall v. Time Inc.* (2008)158 Cal.App.4th 847, 70 Cal.Rptr.3d 466, explained

24   that a plaintiff must allege more than that they paid for a product as a result of an allegedly unfair

25   or fraudulent transaction. Rather, the standing provision in *Business and Professions Code*

26   Section 17204 means what it says – the plaintiff must have suffered injury in fact and lost money

27   or property to sue. In *Hall*, plaintiff alleged that, after a consumer agrees to a free trial period to

28   review a book, Time mails the book with an invoice prominently displaying "a non-contingent

1   obligation which is immediately payable[,] contrary to Time's earlier promise of a no obligation

2   free trial period." "In that way, the complaint alleged, the invoice 'deceiv[es] the consumer into

3   believing that an amount of money is due when, in reality, there is no money due until the

4   expiration of the free trial period according to Time's promise during the consumer solicitation."

5   But the court held that the mere obligation to purchase was inadequate to establish standing.

6   Plaintiff "expended money by paying Time $29.51--but he received a book in exchange. He did

7   not allege he did not want the book, the book was unsatisfactory, or the book was worth less than

8   what he paid for it." Under those circumstances, plaintiff did not have standing to sue.

9        Here, for the same reasons, plaintiffs do not have standing. They do not allege they did not

10  use the program, deleted it, or even that they did not want the program during the renewed period.

11  All it alleges is that they couldn't find a way to turn off the renewal.

### XI.

### CONCLUSION

For all the foregoing reasons, this complaint should be dismissed with prejudice.

DATED: February 23, 2012         **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By:   /s/  Michael A. Geibelson
      Michael A. Geibelson
      Lauren E. Wood
      Attorneys for Defendant
      TREND MICRO INC.