UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SHARON GENTGES, an individual, MARION KERSTING, an individual, JOHN NEKORANEC, an individual, LEANNA NEKORANEC, an individual, and LYLE J. HALS, an individual, individually and on behalf of a class of similarly situated persons,<br><br>            Plaintiffs,<br><br>     vs.<br><br>TREND MICRO INC., a California corporation, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No:  C 11-5574 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket 47 |

Plaintiffs Sharon Gentges, Marion Kersting, John and Leanna Nekoranec, and Lyle J. Hals bring the instant putative class action against Defendant Trend Micro Inc. ("Trend Micro"), alleging state law claims based on violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, et seq., and the California Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq. The gist of their claims is that Trend Micro fails to adequately disclose to consumers that software subscriptions purchased through its website will be automatically billed for software subscription renewals.  Jurisdiction is predicated upon the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2).

The parties are presently before the Court on Defendant Trend Micro's Amended Motion to Dismiss and Motion to Strike, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 47. Having read and considered the papers filed in connection with this matter and being fully informed, the Court GRANTS the motion to dismiss for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. BACKGROUND

  A. OVERVIEW

    1. Summary of Allegations

Defendant Trend Micro, a California corporation which maintains a business office in Cupertino, California, sells computer security and anti-virus software to businesses and individuals on its website, which is located at the URL, www.trendmicro.com. First Am. Compl. ("FAC") ¶ 2. As is common in commercial websites, Trend Micro's site includes information regarding the company and its software products, and contains a link to an on-line "Store" where its products can be purchased. Id.; Hoen Decl. ¶ 4, Dkt. 25. Trend Micro's products are sold on a subscription basis for one or more years. Id. ¶ 3. The software will cease to function once the term has expired, unless the subscription is renewed. Id.

When purchasing a Trend Micro product through its website, a consumer must proceed through a multi-step process. Id. ¶¶ 30-42. At Step 1, the consumer selects the product she wishes to purchase. Id. ¶ 33. Under the product title, in smaller print, there is a link for "(update Auto-Renew status) Auto-Renew." Id. If the consumer clicks on this link, a pop-up window appears that allows the consumer to turn off the Auto-Renew feature. Id. Plaintiffs claim that a reasonable consumer would not notice the Auto-Renew text or click on it, as it allegedly is not clearly and conspicuously disclosed as a material term of the transaction. Id. At Step 2, the consumer is prompted to enter her billing and payment information. Id. ¶¶ 39-40. Step 3 is the Order Complete page. Hoen Decl. Ex. D.

Each of the Plaintiffs allegedly purchased a one-year subscription to Trend Micro anti-virus software and subsequently had their subscriptions renewed without their knowledge or consent. Id. ¶ 7. Plaintiffs allege that the alleged lack of clear disclosure regarding the Auto-Renew process is deceptive and misleading. However, none of the Plaintiffs allege that they did not desire to renew their software subscription, that their subscription was not renewed following payment or that the software was defective or not worth the renewal price.

### 2. Ownership and Operation of the On-Line Store

The URL www.trendmicro.com is registered to Trend Micro. Rosenfeld Decl. Ex. A, Dkt. 31-1. The on-line Store on the Trend Micro website, however, is owned, controlled and operated by non-party Digital River, Inc. ("Digital River"), a Delaware corporation with its principal place of business in Minnesota. Hoen Decl. ¶ 2 and Ex. A § II.A.2, II.B.5. Digital River operates the Store under the auspices of two related agreements, collectively referred to as the "Digital River-Trend Micro Agreement," effective April 1, 2006. Id. ¶ 2 and Exs. A, B. The agreement was entered into by Trend Micro's parent entity, Trend Micro Incorporated ("TM Japan"), a Japanese corporation with its principal place of business located in Tokyo, Japan, and Digital River and affiliated entities. Id.[1]

Under the terms of the Digital River-Trend Micro Agreement, Digital River purchases licenses wholesale from TM Japan for resale through the online Store. Id. ¶ 2; Ex. A § I.A., II.A. Although the on-line Store is accessed through Trend Micro's website, once the consumer clicks on the "Buy Now" hyperlink to initiate the purchase, she is rerouted to a server owned and operated by Digital River which is located in Minnesota.

---

[1] The other two signatories are Digital River Ireland Limited, a company organized under the laws of Ireland, and Digital River Japan K.K., an entity organized under Japanese law with its principal place of business in Tokyo, Japan. For simplicity, the Digital River entities are collectively referred to as "Digital River." Hoen Decl. ¶ 2.

Id. ¶ 22; Drew Decl. ¶ 4, Dkt. 24; Hoen Decl. Ex. A § II.A.3.[2]  As an authorized reseller, Digital River, not Trend Micro, sets prices, collects funds and pays taxes for sales of software licenses through its Store.  Id. Ex. A §§ I.A. and II.F.2.  In addition, Digital River is vested with "full control over the privacy policy, *terms and conditions of sale, and text of pages* which are utilized in connection with the *Cart* [i.e., those parts of the Store that are associated with the purchase process]."  Id. § II.A.2 (emphasis added).  "Returns and refunds are in the discretion of [Digital River.]"  Id. § II.A.12.  Trend Micro does not sell any software licenses through www.trendmicro.com.  Drew Decl. ¶ 4; Lau Decl. ¶ 2, Dkt. 26.

### B.     PROCEDURAL HISTORY

Plaintiffs filed their original Complaint in this Court on November 16, 2011, and their First Amended Complaint ("FAC") on February 2, 2012.  The FAC alleges that "Plaintiffs bring this action on their own behalf and as representatives of all persons: a) who purchased a software membership product on the Trend Micro website, and b) who were charged for the automatic renewal of that software product by Trend Micro on or after November 15, 2007[.]"  FAC ¶ 107.  The FAC alleges two claims for violation of the UCL and the CLRA.

Trend Micro has now filed a motion to dismiss the claims alleged in the FAC for lack of subject matter jurisdiction and failure to state a claim.  Dkt. 47.  Principally, Trend Micro argues that Digital River, not Trend Micro, owns and controls the Trend Micro on-line Store and is solely responsible for the conduct that forms the basis of this action.  Trend Micro also contends that Plaintiffs lack standing on the grounds that the UCL and CFRA do not apply to non-California consumers where the conduct giving rise to their claims took place outside of California, and because Plaintiffs have failed to allege that Trend Micro's alleged lack of adequate disclosure regarding the Auto-Renew process

---

[2] To the consumer, this process is transparent, as the on-line Store appears at the URL www.trendmicro.com.  Drew Decl. ¶ 4. The on-line Store uses the Trend Micro URL in order to avoid customer confusion about whether the software being sold is from a legitimate, authorized reseller.  Id.

affected their purchase decision. The motion has been fully briefed and is ripe for adjudication.

## II. LEGAL STANDARD

### A. RULE 12(B)(1)

A complaint may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). In a "facial" challenge, the court assumes the truth of plaintiff's factual allegations and draws all reasonable inferences in its favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). In the case of a "speaking" motion, the court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). In that case, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Department of Health and Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (internal quotation marks and citation omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

### B. RULE 12(B)(6)

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the

- 5 -

1  light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of
2  Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).
3       "[T]he tenet that a court must accept as true all of the allegations contained in a
4  complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a
5  cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v.
6  Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009).  To survive a motion to dismiss for
7  failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that
8  is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The
9  plaintiff must allege facts sufficient to "nudge his claims . . . across the line from
10 conceivable to plausible." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) (quoting
11 Twombly, 550 U.S. at 570).  The allegations must "give the defendant fair notice of what
12 the … claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.  Where a
13 complaint or claim is dismissed, leave to amend generally is granted, unless further
14 amendment would be futile. Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir.
15 2002).

**III.   DISCUSSION**

    **A.   STANDING**

The party seeking relief in a federal court action "bears the burden of showing that he has standing for each type of relief sought." Summers v. Earth Island Inst., 555 U.S. 488, 493.  The doctrine of standing has both constitutional and prudential (i.e., non-constitutional) components. See Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941, 950 (9th Cir. 2006).  Constitutional standing pertains to Article III's case or controversy requirement. Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Prudential standing considers whether "a particular plaintiff has been

granted a right to sue by the statute under which he or she brings suit." City of Sausalito v. O'Neill, 386 F.3d 1186, 1199 (9th Cir. 2004).[3]

### 1. Constitutional Standing

Constitutional standing is a threshold requirement for federal court jurisdiction. Lujan, 504 U.S. at 559-60. Under Article III of the Constitution, federal judicial power extends only to "Cases" and "Controversies." U.S. Const., art. III, § 2, cl. 1. "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) *an injury in fact* (i.e., a concrete and particularized invasion of a legally protected interest); (2) *causation* (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) *redressability* (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." Sprint Commc'n Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273-74 (2008) (citing Lujan, 504 U.S. at 560-561) (internal quotations and alterations omitted). The party invoking federal jurisdiction bears the burden of establishing these elements, which are the "irreducible constitutional minimum" requirements of standing. Lujan, 504 U.S. at 560-61.

The standing dispute in this case centers on what the Supreme Court has characterized as "the causation requirement" of standing, i.e., "fair traceability." Bennett v. Spear, 520 U.S. 154, 167 (1997). "To show causation, the plaintiff must demonstrate a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1227 (9th Cir. 2008). "Although the "traceability" of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation, Article III *does* require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Habecker v. Town of Estes Park,

---

[3] While Article III standing may be raised in a Rule 12(b)(1) motion, questions of prudential standing must be raised in a Rule 12(b)(6) motion. See Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174-75 (9th Cir. 2004).

Colo., 518 F.3d 1217, 1225 (10th Cir. 2008) (citations and internal quotations omitted and emphasis added).

Here, Plaintiffs have failed to carry their burden of establishing that their alleged injury, i.e., the renewal of their software subscriptions without adequate prior notice, is fairly traceable to Trend Micro. The evidence presented by Trend Micro, which is not controverted by Plaintiffs, shows that it was Digital River—not Trend Micro—that engaged in the disputed transactions with Plaintiffs. As the Digital River-Trend Micro Agreement and record evidence makes clear, Trend Micro does not sell any software on its website. Drew Decl. ¶ 4; Lau Decl. ¶ 2. Rather, all purchase transactions, including initial and renewal payments, are controlled by Digital River through the on-line Store, which Digital River owns and controls. Hoen Decl. Ex. A § I.A, II.A. Trend Micro's complete lack of involvement in the transactions forming the basis of this action is underscored by the fact that all Plaintiffs' payments (except for Plaintiff Leanna Nekoranec, who had no dealings with Digital River or Trend Micro) were processed by Digital River, not Trend Micro. Hoen Decl. ¶¶ 24-50.

Plaintiffs attempt to make much of the fact that the URL www.trendmicro.com is registered to Trend Micro and that the on-line Store is accessed through that web address. Opp'n at 6. However, Trend Micro's ownership of the domain name is inapposite. The practices at issue in this action pertain specifically to sale of Trend Micro products made through its on-line Store, not the website in general. See FAC ¶¶ 30-42. As discussed, Digital River owns the licenses for software which are resold to the public through the on-line Store. Digital River, not Trend Micro, owns the Store and has "full control" over the Store's content and the "terms and conditions" governing sales made through it Store. Hoen Decl. Ex. A § II.A.2. Although consumers are able to access the Store through www.trendmicro.com, the actual purchase transaction is routed to Digital River's servers in Minnesota. Drew Decl. ¶ 4. The reason the Trend Micro domain name remains constant throughout the purchase transaction is to avoid customer confusion as to whether Digital River is an authorized reseller of authentic Trend Micro products. Id. Digital River's

responsibility for the sales transaction is underscored by the emails confirming purchase transactions which direct the purchaser to "contact Digital River" for any "billing questions or additional assistance with your order." Hoen Decl. Ex. H at 6.

Equally unavailing is Plaintiffs' reliance on its "alternative" allegations that Trend Micro retains the "right to control the content and functionality of the Trend Micro website," and therefore, their alleged injury is traceable to Trend Micro. See Opp'n at 6; FAC ¶¶ 51-56. Not only is this argument conclusory and unsupported, it is belied by the terms of the Digital River-Trend Micro Agreement, which unequivocally establish that control of the purchase transaction and the renewal of subscriptions for Trend Micro software are handled by Digital River, as opposed to Trend Micro.

### 2. Prudential Standing

#### a) Extraterritorial Application of the UCL and CLRA

Assuming arguendo that Plaintiffs sufficiently demonstrated Article III standing—which they have not—Plaintiffs fail to meet their burden of showing prudential standing. The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Similarly, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Trend Micro contends that Plaintiffs, none of whom are California residents, lack standing to pursue UCL or CLRA claims. Mot. at 15-17. The Court agrees.

California courts have long acknowledged a general presumption against the extraterritorial applications of state laws. Sullivan v. Oracle Corp., 51 Cal.4th 1191, 1207 (2011). "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force." Id. Applying that presumption, state and federal courts have concluded that the UCL and CLRA do not reach claims of non-California residents arising from conduct occurring entirely outside of California. Norwest Mortg., Inc. v. Super. Ct., 72 Cal. App. 4th 214, 222 (1999) (holding that the UCL was inapplicable to "injuries suffered by non-California residents, caused by

conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California"); In re Apple and AT & T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing CLRA and UCL claims by non-California residents who purchased their iPad and data plans outside of California); Churchill Vill., L.L.C. v. Gen. Elec. Co., 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (rejecting claims by non-California consumers where none of the defendant's written or oral communications made in California was directed to consumers outside the state), aff'd, 361 F.3d 566 (9th Cir. 2004).

Having reviewed the allegations of the FAC and matters subject to judicial notice, the Court is persuaded that Plaintiffs lack standing to pursue claims under the UCL and CFRA. None of the Plaintiffs resides in California and none of the conduct that forms the basis of this action arose here. FAC ¶¶ 17-22. Although Trend Micro may own the URL <www.trendmicro.com>, Digital River both owns and controls the content of the on-line Store. Hoen Decl. Ex. A § II.A.2. In addition, the on-line Store was hosted, not on Trend Micro's server, but on Digital River's server located outside of California. Id. § II.A.3. Plaintiffs vague and conclusory allegations that Trend Micro provided unspecified assistance to Digital River, see FAC ¶¶ 51-56, are directly contravened by the Digital River-Trend Micro Agreement, which establishes precisely the opposite. A court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or "that contradict matters properly subject to judicial notice." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). That is the exact circumstance here. In sum, the Court finds that there is little, if any nexus, between Plaintiffs and their claims and California; therefore, Plaintiffs lack prudential standing to assert claims under the UCL and CLRA.[4]

---

[4] The Court also notes that Plaintiffs' admitted failure to file the requisite certificate under California Civil Code § 1780(d) also deprives them of standing to assert a CLRA claim. See In re Apple & AT & T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing CLRA claims where plaintiff failed to file § 1780(d) affidavit); In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1094 (S.D. Cal. 2010) (same).

### *b)* *Causation*

Even if the UCL and CFRA were deemed to apply extraterritorially, Plaintiffs have not alleged conduct within the purview of either statute. The UCL requires that a named class representative must demonstrate "actual reliance" to have standing to sue—i.e., the plaintiff must show "that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." In re Tobacco II Cases, 46 Cal.4th 298, 328 (2009) (citations and internal quotations omitted). The same holds true for claims under the CLRA. Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1366-67 (2010).

Here, Plaintiffs fail to allege that Trend Micro's alleged lack of clear disclosure regarding the Auto-Renew process was an immediate cause of their injury. Nowhere in the FAC do Plaintiffs claim that they did not want to have their subscriptions renewed automatically. To the contrary, Plaintiffs merely allege that the lack of full disclosure, standing alone, was harmful. See FAC ¶¶ 50, 78, 88, 97. Such allegations are insufficient to establish standing under either the UCL or CLRA. E.g., Durell, 183 Cal.App.4th at 1363-64, 67 (affirming demurrer to UCL and CLRA claims where plaintiff alleged he was injured by defendant's business practices but did not actually rely in any alleged misrepresentations); Hall v. Time, Inc., 158 Cal. App. 4th 847, 855 (2008) (holding that plaintiff lacked standing under the UCL to sue bookseller based on its failure to disclose that the book was sold with a 21-day trial period, where plaintiff "did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it.").

### IV.   **CONCLUSION**

The Court finds that Plaintiffs lack constitutional and prudential standing to bring claims under the UCL and CFRA. Because that determination is dispositive and mandates the dismissal of the action, the Court need not reach Trend Micro's remaining arguments. Accordingly,

1     IT IS HEREBY ORDERED THAT Defendant Trend Micro's Motion to Dismiss is
2 GRANTED. The claims alleged in this action are dismissed without prejudice. The Clerk
3 shall close the file and terminate all pending matters. All previously-scheduled dates and
4 deadlines are VACATED.
5     IT IS SO ORDERED.
6 Dated: June _9, 2012                             _____
7                                                        SAUNDRA BROWN ARMSTRONG
                                                       United States District Judge